## A. P. LUFKIN V. CITY OF GALVESTON.

(Case No. 1435.)

1. BURDEN OF PROOF — CITY ASSESSMENT.— An ordinance of the city of Galveston required the city engineer, where certain preliminary notices had been given, to proceed to fill up lots designated by the health officer of the city, and to make a list of the lots so filled, entering opposite each lot its proper portion of the cost. Upon the approval of that list by the city council, the amount placed opposite to each lot was made an assessment against the same and a lien thereon. In a suit to enforce such assessment and lien, *held*,

(1) That the burden of showing clearly, from the proceedings of the city council, that the assessment sought to be enforced was embraced in a list reported by the engineer and approved by the council, devolved upon the city.

(2) That the approval of the council must be based on the report or list of the engineer, and where the proceedings showed no list embracing the assessment dated and sworn to on August 17th, and the action of the council was predicated on the report of a committee to examine reports of the engineer, which committee reported on August 3d, that it did not appear that the approval of the council embraced the work done on the lots in question.

(3) That the proceedings of the council in this case failed to show a valid assessment.

2. See this case for the views of Associate Justice Stayton as to the want of power in the city council, under the charter, to authorize the health officer to designate lots to be filled, so as to make the cost of filling a lien on the lots.

APPEAL from Galveston county.

*Trezevant & Franklin*, for appellant.

I. Powers and trusts delegated to a municipal corporation by statute are incapable of delegation. Charter 1871, tit. IV, art. 3, sec. 47; Charter 1871, tit. VIII, art. 8, sec. 1; Dillon on Mun. Corp., secs. 96 and note 1, 779, 3d ed., and notes; Cooley's Con. Lim., 204; Burroughs' Tax., 482; Birdsall *v.* Clark, 73 N. Y., 73; White *v.* Mayor, 2 Swan (Tenn.), 364; Thompson *v.* Schermerhorn, 6 N. Y., 92; Oakland *v.* Carpenter, 13 Cal., 540; East St. Louis *v.* Wehmung, 50 Ill., 23; City of St. Louis *v.* Clemens, 52 Mo., 134 (14 Am. R.); Ruggles *v.* Colier, 43 Mo., 353;

Murphy *v.* Clemens, id., 395; Shehan *v.* Gleason, 46 Mo., 100 (2 Am. R.).

II. The extracts from the minutes of the city council, given in substance in the statement under this proposition, were irrelevant and not competent evidence to sustain plaintiff's allegation that the city council, on the 17th day of August, 1875, accepted and approved the sworn list and description of the lots filled and work done.

*H. K. Mann,* for appellee.

I. Appellee proved, to the satisfaction of the court below, by the assessment rolls, extracts of the proceedings of the city council, and the direct testimony of an alderman, that the assessment sued on was duly and lawfully made. We cite following authorities: Carter *v.* Carter, 5 Tex., 93; Latham *v.* Selkirk, 11 Tex., 314; Jones *v.* Williams, 41 Tex., 391.

II. When the city engineer, on the 3d day of August, 1874, submitted his report and assessment list to the city council, it was proper and just for the committee on license and assessments to call the attention of the engineer to any errors in the names of owners, etc., and it was their special province to direct the said engineer to rectify such errors; and evidence was admissible to show that the corrections were made in the handwriting of Abram Cross, city engineer, and that he did not sign and swear to his said assessment list or roll until after all corrections were made.

III. The purpose of making the assessment is a public one, which justifies the levy of a tax, but the benefit of the filling is not only local but also specific, benefiting the particular property, and therefore the tax or assessment may be levied on this property which received a benefit over and above other property in the city. Burroughs on Taxation, 459; People *v.* Mayor of Brooklyn, 4 N. Y., 420; Dorgan *v.* Boston, 12 Allen, 223; City of Lex-

ington *v.* McQuellan's Heirs, 513; Louisville *v.* Rolling Mill Co., 3 Bush, 416.

STAYTON, ASSOCIATE JUSTICE.— This suit was brought by the city of Galveston to enforce an alleged assessment and lien, claimed under its charter and ordinances, on lots 3 and 4, in block 565, in said city, for the costs of filling up said lots with sand, so as to prevent water standing thereon to the injury of the health of the city, which work was done by the city. Lufkin became the owner of the property since the work was done.

The work was done under the supervision of the city engineer, who was directed so to do by the health physician of the city, after the agent of the owners of the property had been notified to do the work necessary to prevent water standing upon the lots, and he and the owners had failed to do so. The provisions of the charter and ordinances of the city under which the right to do the work and make the same a charge upon the property is claimed will be hereafter set out, together with such other portions of the charter and ordinances of the city as may be necessary to the determination of the case.

The claim was resisted in the court below upon the grounds:

1st. That the charter confided to the city council a discretionary power, which must be exercised by it in taking such steps as were necessary to fix the charge upon the property, which could not be delegated to the health officer and the city engineer or to any other person.

2d. That there had been no such exercise of discretion by the city council, resulting in a legal assessment.

That part of the charter under which the claim is made is as follows:

### ARTICLE VIII — TITLE 8.

The city council shall have power to require the filling up, draining and regulating of any lot or lots, grounds

or yards, or any other places in the city which shall be unwholesome or have stagnant water therein, or from any other cause be in such condition as to be liable to produce disease; also to cause all premises to be inspected, and low buildings raised to such height as the council shall determine, and to impose fines on the owners of houses under which stagnant water may be found, and to pass such ordinances as they shall deem necessary for the purposes aforesaid, and for the making, filling up, altering or repairing of all sinks and privies, and directing the mode and manner of constructing them in future, and for cleansing of any house, building, establishment, lot, yard or ground from filth, carrion or impure or unwholesome matter of any kind, and to punish any owner or occupant violating the provisions of any ordinance so passed as aforesaid; and the city council shall also, and in addition to the foregoing remedy, have the power to cause any of the improvements above mentioned to be done at the expense of the city, on account of the owners, and cause the expense to be assessed on the real estate, or lot or lots benefited thereby; and on filing with the district clerk of Galveston county a statement by the mayor of such expense, shall have a first and privileged lien on said property to secure said expenditure and twelve per cent. interest thereon.   For any such expenditure and interest as aforesaid suit may be instituted, and recovery had, in the name of the corporation in any court having jurisdiction, and the statement so made as aforesaid, or a certified copy thereof, shall be full proof and satisfactory evidence of the amount so expended in any such improvement.

The ordinance of the city relied upon is as follows:

Art. 312. [1.] The health physician shall have power to order and enforce the drainage and filling up of any lot, grounds, yards or any other place in the city, whose con-

dition he may deem to be unwholesome or liable to become so.

Art. 321. [I.] Be it ordained by the city council of the city of Galveston: That every lot or parcel of ground upon which any pool of stagnant water has accumulated, or is likely to accumulate, or which in other respects may have a tendency to engender disease, shall be deemed and is hereby declared a public nuisance; and the owner or owners, lessee or lessees of such lot or parcel of ground, upon being notified, in writing, by the mayor or health officer, shall fill up the same with sand or earth, and cleanse or purify the same, or cause it to be done, in such mode and manner, and within such space of time as may be limited and designated in such notice; and in filling up said lot or parcel of ground shall conform to such grade as the city council shall establish, to the satisfaction of the health officer of the city.

Art. 324. [IV.] All notices required by the preceding sections shall be in writing, and may be served by the health officer, or, under his direction, by the police of the city, upon the owner, or agent of the owner, or the tenant of the premises offending, if resident in the city; but if the premises be unoccupied, and the owner is a non-resident, and has no resident agent, then notice shall be served by posting a written notice on the premises; and in case the owner, or agent of the owner, or tenant, shall fail or refuse to fill up, raise, cleanse or purify said premises, after being duly notified, and required, as aforesaid, in the manner and within the time limited and appointed therefor, he, she or they shall be liable to a fine of twenty dollars for each and every day the said premises shall remain in its noxious condition after the time limited for the filling up, cleansing or purification thereof.

Art. 325. [V.] On the expiration of forty-eight hours

after the time limited in the notice, the same not having been complied with, or only partially complied with, the health officer shall notify the city engineer to proceed and do the work required by said notice; and the city engineer shall immediately engage and put to work a sufficient force of men and teams to do said work, or he shall contract with proper and responsible parties to do the said work; and as soon as the same is finished and completed, he shall make out and enter in a book regularly prepared for the purpose a full list of all the lots, or fractional lots, filled up and improved in the manner aforesaid, giving the number of each, the number of the block in which situated, the names of the owners thereof, if known, and if not known, then the said lots, or fractional lots, shall be entered upon the said book as unknown. The said officer shall then enter or place in the said book, opposite each lot, or fractional lot, its proper or *pro rata* portion of the cost of said work, and shall exhibit his said list and account so made out, signed and sworn to by him, to the city council at its next regular meeting after the said list and account is made out and finished, and upon the approval and acceptance of the same by the city council the amount placed on the said list opposite each lot, or fractional lot, shall be an assessment against the same, and each assessment so made shall date back to the time or date upon which the said work was finished and completed, and the same shall be, until paid, a lien upon the property against which it is levied. The said assessments shall be paid in five equal annual installments, and they shall draw interest from date of assessment until paid, at the rate of twelve per centum per annum. The first installment shall be due and payable immediately after the said work is finished and completed; and an installment equal thereto shall become due and payable annually thereafter until the entire assessment and accrued interest is paid

Art. 326. [VI.] It shall be the duty of the mayor to file a copy of said account, certified to by him, as a statement of said expense, with the clerk of the district court for the county of Galveston for record, and deliver the account to the attorney employed by the city for collection.

In addition to the power given to the health physician under the above ordinance, another ordinance provides, "That the health physician shall have power to require, by notice in writing, the filling up, draining and regulating of any lot or lots, grounds or yards, or any other place in the city, which shall be unwholesome, or have stagnant water therein, or from any other cause be in such condition as to be liable to produce disease. He shall also cause all premises to be inspected and the lot or lots to be filled up to the grade established by the city council; and he shall have authority to regulate the making, filling up, altering or repairing of all sinks and privies, and directing the mode and material of constructing them in the future, and for cleansing and disinfecting the same, and for cleansing and disinfecting any house, building, establishment, lot, yard or ground from filth, carrion or impure or unwholesome matter of any kind."

The charter provides that "the city council shall appoint a health physician and as many health inspectors as they may deem necessary, and shall prescribe by ordinance the powers and duties of the same."

The only ordinance regulating the grade of any part of the city is as follows:

"That the minimum grade height of the streets of the city of Galveston is and shall remain established at six feet and two-tenths of a foot, measured from mean low tide, as established by Lieut. H. M. Adams, U. S. engineer, to the corner of the street. That the outer edge of the sidewalks shall be on a line with the corner of the street, with a rise of five inches to the line of the lot."

No ordinance of the city council is shown to have been passed directing that the work upon which the claim is based should be done, nor determining the necessity therefor, nor the plan, manner, nor extent to which the work should be carried.

The main question in this case is, had the city council the power, under its charter, to leave to the determination of the health physician the question of the necessity for the work done, without inquiry by itself into that necessity; and the power to leave to the determination of the city engineer the kind, plan, manner and extent of the work necessary to be done upon the property, without an exercise of its own discretion in regard thereto, and thereby to fix a charge upon the property for work done under the judgment and discretion of those officers alone?

That in all matters resting peculiarly upon the professional skill of those officers, no doubt the city council would and should rely upon their opinions, and in so far as their acts are purely ministerial and advisory, and such are the powers conferred upon them by the charter, much may and ought to be left to their judgments.

If the lots which belong to the appellant were in such condition that stagnant water accumulated and stood upon them, to the injury of the health of the city, even under the general ordinance which the city council had passed, we have no doubt that the health physician and city engineer had full power to have such work done, at the expense of the city, as was necessary to remove the evil, and that for the doing of such act no one could complain if the work was really necessary. This would be but the exercise of that necessary police power which the city had and might properly exercise through agents, whose skill in the given business must be relied upon by the city government, and to whom the exercise of much discretion must be confided, in the nature of things, as to

those matters lying within professional skill; but still their powers are but ministerial, executive or advisory, and they have no. legislative powers such as are lodged with the city council. Dillon on Municipal Corporations, 371, and citations in note.

The fact that a municipal corporation may do many acts through such officers which are not particularly specified by an ordinance, but are only embraced in general ordinances, cannot add to or change the character of power which they may lawfully exercise.

Such exercise of power as is necessary to protect a community from contagion or other like ill may be exercised by ministerial officers acting under ordinances general in their character and regulating their duties; for. any community has the inherent power to do that; but the end of self-protection being accomplished, the necessity for the exercise of discretionary power by advisory or ministerial officers ceases, and it cannot be so extended as to confer upon them power to exercise such discretion as is necessary to impose a charge upon the property of a citizen without his consent; that can only be done by the exercise of such legislative power by the city council as the legislature of the state has conferred upon it.

The power of the legislature to authorize the city council to have the work done for which the charge is made, and to give the city a lien upon the lots to reimburse it for the expenses incurred, affecting, as it did, a question of the health of the city, as well as the improvement of the property, we do not question. Cooley on Taxation, 402, and citations; Burroughs on Taxation, 496, and citations.

The charter empowers the city council by ordinance to cause such lots to be filled as may be necessary to be filled for sanitary reasons, and also empowers the city council to cause the filling to be done on account of the owner, and the expense thereof to be assessed against the

property filled, with a lien thereon to secure the payment.

The question is, did the city council do that, or was it done in plan, manner and extent as determined by ministerial or advisory officers of the corporation?

That in order to fix a lien upon the property it was necessary not only that the city council should direct the work to be done, but that it should determine the plan, manner and extent of the work, would seem to be beyond question.

That such power must be exercised by the city council, upon which it had been expressly conferred, and not by some of the executive, ministerial or advisory officers of the corporation, is well settled.

The legislature having placed the power in the hands of the municipal board, which it was willing should execute it, the same could not be by it delegated to another not so selected.

The rule is thus well stated: "Another and very important limitation which rests upon municipal powers is that they shall be executed by the municipality itself, or by such agencies or officers as the statute has pointed out. So far as its functions are legislative they rest in the discretion and judgment of the municipal body intrusted with them, and that body cannot refer the exercise of the power to the discretion and judgment of its subordinates or of any other authority. So strictly is this rule applied, that when a city charter authorized the common council of the city to make by-laws and ordinances, ordering and directing any of the streets to be pitched, levelled, paved, flagged, etc., or for the altering or repairing of the same, within such time and in such manner as they may prescribe, under the superintendence and direction of the city superintendent, and the common council passed an ordinance directing a certain street to be pitched, levelled and flagged, "in such manner as the city superintendent, un-

der the direction of the committee on roads of the common council, shall direct and require," the ordinance was held void, because it left to the city superintendent and the committee of the common council the decision which, under the law, must be made by the council itself.

The trust was an important and delicate one, as the expenses of the improvements were by the statute to be paid by the owners of property in front of which it was made. It was in effect the power of taxation; and taxation is the exercise of sovereign authority; and nothing short of the most positive and explicit language could justify the court in holding that the legislature intended to confer such a power, or to permit it to be conferred on a city officer or committee. The statute in question not only contained no such language, but, on the contrary, clearly expressed the intention of conferring the exercise of this power to the common council, the members of which were elected by and responsible to those whose property they were thus allowed to tax." Cooley's Constitutional Limitations, 204. The case referred to in the above quotation is the case of Thompson v. Schermerhorn, 6 N. Y., 92, and in no essential matter is the charter therein referred to different from that now under consideration; for the words, "within such time and in such manner as they may prescribe," used in that charter, neither add to nor restrict the power which would have been conferred if they had been omitted.

The charter then under consideration was in many respects almost identical with that we now have before us, as was the ordinance requiring the owners of the property to perform the designated work on a certain street, the manner of the work alone being left to the direction of the city superintendent under the direction of the committee on roads.

In that case, after the owners of property, upon whom the charges of making the improvements was imposed,

had shown no disposition to do the work, an ordinance was passed by the common council specifying the work to be done, and place where it was to be done, which directed the superintendent of streets, under the direction of the committee on roads, to do the work, nothing being left to their discretion but the manner of doing the work.

By placing the power in the city council the legislature impliedly prohibited its exercise by any other body or officer. Cooley's Const. Lim., 250; Clark v. Washington, 12 Wheat., 54.

The rule is thus stated by another author: "The principle is a plain one, that the public powers or trusts, devolved by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall judge best, *cannot be delegated to others.* Thus when by charter or statute local improvements to be assessed upon the adjacent property owners are to be constructed in such manner as the common council shall prescribe, by ordinance, it is not competent for the council to pass an ordinance delegating or leaving to any officer or committee of the corporation the power to determine the mode, manner or plan of the improvement. Such an ordinance is void, since powers of that kind must be exercised in strict conformity with the charter or incorporating act." Dillon on Mun. Corp., 96, and citations; Burroughs on Taxation, 482, and citations.

This question has frequently arisen in cases in which local assessments have been made for the purpose of improving streets and sidewalks, and their application to the present question is very direct; for if we discard the idea of improvement of the property which was filled in this case, no legal ground could be found for placing, in any event, the cost of the work upon the property; for the simple fact that water stands upon land, low, as nature formed it, and not so made from artificial causes, does not

in a legal sense constitute a nuisance which the owner of the land is bound to remove. Wood on Nuisances, 118, 119, and citations.

In the case of Murray, etc., v. Tucker, etc., 10 Bush, 241, which was a case of local assessment for improving an alley, the court said: "The legislature has prescribed the manner in which the city council may compel the citizen to contribute to the improvement of streets and alleys in which the latter may be interested, and from which, in the opinion of the council, he derives a benefit. The power to make those contracts by the council as the agent of the property holder, and with which the latter must comply, although no party to the proceedings, being derived solely from the legislative enactment, this court, instead of enlarging such power by implication or construction, which when exercised within proper bounds must often prove onerous and oppressive to the citizen, will require a strict adherence to the letter and spirit of the law from which the right to tax the citizen is derived. The general council must first direct the improvement by ordinance, and the contract must be made in pursuance therewith. . . . This court held that the city council alone had the power to determine the necessity for the improvement, and that the exercise of this right could not be delegated to the engineer. . . . To hold otherwise would be giving to the engineer the right at his discretion, and when in his opinion the interest of the city and the property-holder would be advanced thereby, to tax the latter and subject his property to its payment." To the same effect are the following cases: The People, etc., v. Clark, 47 Cal., 456; Kinmundy v. Mahan et al., 72 Ill., 464; Jackson County v. Brush, 77 Ill., 59; Mathews v. The City of Alexandria, 68 Mo., 115.

It is not enough that the city council should have passed a general ordinance directing any of the officers of the corporation to do or have a given kind of work done

when such officer might think it necessary; nothing less than an ordinance indicating the intention of the city council, and the particular work to be done, will be sufficient. Randolph v. Gawley, 47 Cal., 458; Hicks v. Joyes, 4 Bush, 464; Burroughs on Taxation, 482, and citations; Dillon on Municipal Corporations, 69, and citations in note 1; 779, and citations in note 2.

In the case now under consideration there was no ordinance directing the particular lots to be filled; to what grade they should be filled; when the same should be done; whether by contract or otherwise; but whether they should be filled or not, when and in what manner, and how, was left entirely to the discretion of ministerial officers of the corporation.

If the municipal government of a city sees fit by such a course of proceedings to do work on the property of a citizen without his request or consent, which is necessary to the sanitary welfare of the city, it may do so at its own expense; but by nothing less than a strict compliance, by the city council itself, with the terms of the charter which empowers it to make improvements upon the property of a citizen, can it acquire the right to impose the burden of paying for such improvements upon the property or its owner.

If there had been a general ordinance directing that lots in the city or in a given part of the city should be raised to a certain grade, in a manner reasonably well defined, that would perhaps have been sufficient, but no such ordinance has been shown to have existed; and the whole matter, as to plan, manner, extent and time as well as place, was left to the discretion of officers to whom the legislature never confided it.

The charter provides that the city council shall have power "to pass such ordinances as they shall deem necessary for the purposes aforesaid," and shall "have the

power to cause any of the improvements above mentioned to be done at the expense of the city on account of the owners;" the ordinance provides that "it shall be done in such time, mode and manner" as the health physician or mayor may indicate, by the city engineer, by contract or otherwise, if the owner failed to do the work.   These officers, if it seemed proper to them to do so, could place oppressive burdens upon the citizen; if such powers had been intended to be conferred upon them, the legislature would have said so; not having done so, no charge upon the property of the appellant can be fixed by their acts. Such are the views of the writer.

It is claimed that if the city council did not originally take such steps as were necessary to fix the charge upon the property, that it subsequently ratified the acts of its ministerial officers, and that the assessment thereby became legal.

There being no common-law obligation upon the part of the owner to assume and pay the cost of the improvement, and there being no provision in the charter of the city which authorizes the ratification of the acts of the health physician and city engineer, by the city council, for the purpose of fixing a charge upon the property, it will be difficult to point to the legal principle upon which such a power can be based.   Murray v. Tucker, 10 Bush (Ky.), 244.

That a contract to do certain work, provided for by a proper ordinance, made under the authority of such ordinance, or some other, by a ministerial officer authorized by the city council to make it, might be ratified, there can be no question.   Hitchcock v. Galveston, 96 U. S., 347.

[The foregoing expressions of opinion are those of the writer upon a question which he believed necessarily involved in the case, and upon which the other members of

court expressed *no* opinion, resting the reversal of the case upon the grounds hereinafter stated.]

It is not, however, necessary to pass upon the effect which could be given to a ratification by the city council; for it does not appear that such ratification was ever made. The ordinance relied upon provides that the city engineer, after the completion of the work, "shall then enter or place in said book, opposite each lot or fractional lot, its proper or *pro rata* portion of the cost of said work, and shall exhibit his said list and account so made out, signed and sworn to by him, to the city council at its next regular meeting after the said list and account is made out and finished, and upon the approval and acceptance of the same by the city council, the amount placed on the said list opposite each lot or fractional lot shall be an assessment against the same."

The statement of the city engineer, signed and sworn to, is made the basis of the action of the city council.

The report as contained in the record purports to have been sworn to on the 17th of August, 1874. In the proceedings of the city council of date August 3, 1874, it appears that certain reports which had been referred to the city engineer for correction July 21, 1874, were referred to the license and assessment committee, and on those rolls appeared an item of $6,072.35 on account of property ordered to be filled, paved, etc., but no identification of the particular lots upon which the work was done was given, nor does it appear that the sum now claimed was a part of that named. On the 17th of August, 1874, the license and assessment committee made a report upon the report of the city engineer of date June 15, 1874, in reference to filling lots in Hitchcock's Bayou; also upon that officer's report of July 6, 1874, in regard to assessments on property filled, paved and curbed, and for paving Market street between 19th and 20th streets; also upon that officer's report of date 3d of August, 1874,

for cost of work done to abate nuisances and for filling up Hitchcock's Bayou.   That report was as follows:

"*To the Hon. Mayor and Board of Aldermen:*

"SIRS — Your committee to whom was referred the reports of the city engineer of June 15th, July 6th and August 3d, about work in filling, paving and curbing, beg leave to state that they cannot balance his figures, nor agree to his manner of reporting.   The chairman has called in the assistance of the city attorney, who, however, had no time to attend to it on Saturday.

"There is due one-fifth of $72,500 since April 1. or June 1 from parties for whose benefit the work was done, and the treasury is suffering from delay or neglect in this matter.   The engineer declares that he has done what he should do, that he has no clerical help, and can do no more than he has done.   We recommend the reports to be placed in the hands of the collector, to make collections as far as accounts rendered may permit, and with request to report when he finds mistakes or objections from parties called on for payment."

" On motion the report was received and adopted, and the rolls referred to the collector for collection."

As the report of the city engineer which contained a statement of the work done on the lots which now belong to the appellant forms the basis for the action of the city council, under the charter, in making the assessment, it cannot be presumed that the items thereof went into the reports of the city engineer which were referred to the license and assessment committee, all of which were made before the date of that report.

The burden of proving that such items were considered by the committee and approved by the city council rested upon the appellee, and in matters of this character such action should clearly appear in the proceedings of the city council; it does not so appear, but upon the contrary it does appear, with reasonable certainty, that the mat-

ters acted upon by the committee and adopted by the city council did not embrace the work done upon the lots in question.

If it appeared that the work upon the property in question was embraced in the report acted upon by the committee, it would be exceedingly dangerous to impose a charge upon property upon a report so uncertain and unsatisfactory even to those who made it, and upon its adoption by the city council, which carries with it no more certain evidence of the intention of the city council to impose the charge.

For the reasons above given, in which all the court concur, the judgment of the court below is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 21, 1882.]

We think it proper, to avoid possible misconstruction, to say that our concurrence in the reversal of the judgment is based solely on the last ground taken in the opinion. On the other questions discussed in and forming the body of the opinion delivered, we desire to be understood simply as expressing no opinion.

ROBERT S. GOULD, Ch. J.
M. H. BONNER, Associate J.