## In re FLANNAGAN.

(District Court, W. D. Texas, Waco Division. October 13, 1902.)

### No. 318.

1. BANKRUPTCY—EXEMPTIONS—BUSINESS HOMESTEAD.

    Where a bankrupt engaged in mercantile business made an assignment of all his property, and left his place of business, and went to reside on the farm of his mother, and devoted his subsequent time and attention to his mother's farming interests, and testified that his only

¶ 1. See Homestead, vol. 25, Cent. Dig. § 326.

hope of being able to resume business was the remote contingency of his being able to compromise with his creditors, there was no fixed, definite intent to resume the business, sufficient to entitle him to have the place where he formerly carried on his business exempted to him as a business homestead.

In Bankruptcy.

Thos. F. Bryan, for trustee.
J. B. Kimbell, for bankrupt.

MAXEY, District Judge. The question involved in this proceeding is one of homestead exemption, which should be considered in connection with the following facts, appearing of record: On May 25, 1902, the bankrupt executed, pursuant to the statutes of Texas, a deed of assignment, whereby he conveyed to E. F. Bryant, assignee, his entire stock of goods, wares, and merchandise for the benefit of accepting creditors. For the purpose of setting aside the assignment and of bringing the property within the jurisdiction of this court, certain creditors of the bankrupt instituted involuntary proceedings in bankruptcy against him on May 29th following. In his schedules the bankrupt claimed two distinct parcels of property as homestead exemptions, valued, respectively, at $1,250. The one he claimed as a residence, or home for the family; and the other, the place where he carried on his business, as a business homestead. The trustee appointed in the bankruptcy proceeding set apart to him the residence of the family as exempt under the laws of the state, but declined to include in his exemptions the property in which his business as a merchant had been conducted. Exceptions to the report of the trustee were duly taken by the bankrupt, and upon his motion the entire matter was heard upon the proofs by the referee, who sustained the action of the trustee. The bankrupt thereupon filed his petition for review, and the referee has certified the question to the court. The record further shows that the bankrupt was hopelessly insolvent when he executed the deed of assignment. He conveyed to the assignee all his property, including a stock of goods valued approximately at $250, and some notes and accounts. After the execution of the assignment, he had no property with which to resume business. It is true the bankrupt testified that he had expectations of resuming his former business, but it also appears from his testimony that such expectations were based upon the remote contingency that he would be able to effect an amicable settlement with his creditors. The following excerpts from the examination of the bankrupt illustrate his financial condition and the futility of his hopes of resuming business:

"Q. In the summary here of your bankrupt schedules you place your indebtedness at $3,361.54. A. That was supposed to be correct. Q. You had no means of resuming business in that condition? A. No, but I had hopes of making a settlement with those people that I owed, and putting up the notes and accounts, and paying off those claims, if I could have gotten anything like a reasonable settlement. Q. You conveyed them, didn't you? A. Yes. Q. To Mr. Bryant, the assignee? A. Yes, I thought the creditors would come in. Q. You made a conveyance to the assignee of all your property, did you not? A. Yes, I suppose it would be taken that way. Q. Then you had nothing after that, did you, of any assets, with which to enter into business, after you made that deed of assignment to Mr. Bryant?

A. No, sir. * * * Q. What was your intention in regard to that house [meaning the house of business] in case your creditors failed to make a settlement with you? A. I would be almost handicapped. I could not do anything. * * * Q. Did you have any other property at that time, that you did not embrace in the assignment to the assignee, on which to resume business? A. No, sir; nothing at all. Q. Then, if your creditors took what was in that assignment, and released you, you had nothing on which to resume business? A. No, sir."

It is also shown by the record that after the bankrupt executed the deed of assignment he went out to his mother's farm, to attend to her farming operations, and that he was engaged in no other business or calling. The question, then, upon the facts is whether the bankrupt should be permitted to retain the property in which he conducted his mercantile enterprise as a business homestead. It is believed by the court that the case of Shryock v. Latimer, 57 Tex. 674, which has been subsequently approved in repeated instances, conclusively resolves the question under consideration against the contention of the bankrupt. At page 677 it is said by Mr. Justice Stayton, as the organ of the court:

"The constitution of this state protects to the family in a city, town, or village a homestead, which 'shall consist of lot or lots, not to exceed in value $5.000 at the time of their designation as the homestead, without reference to the value of any improvements thereon: provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family.' This court has held that the place of the home of the family, as well as the place of business of the head of the family, in a city, town, or village, although not upon contiguous lots, was protected from forced sale, so long as used for the purposes contemplated by the constitution. Miller v. Menke's Widow & Heirs (Galveston term, 1880) 56 Tex. 539 The constitution recognizes that, to establish and preserve a homestead in a city, town, or village, the property must 'be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family'; and it also recognizes 'that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired.' To preserve the place of business, which is separate and distinct from the home, as a part of the homestead, two things must concur: (1) The head of a family must have a calling or business to which the property is adapted and reasonably necessary; (2) such property must be used as a place to exercise the calling or business of the head of the family."

And at page 678 it was further said:

"The law no more protects a man in a place to do business which he is not doing, and not making any immediate preparation to do, than it protects to a man a place for a home which is not in fact home, or in reference to which no steps have been taken to make it a home, for the family. The law protects the place of business because it is the place of business, which cannot be unless the head of the family is occupied in a business to which the property is adapted and reasonably necessary. We conclude, under the facts of this case, that the defendant Latimer did not have any business at the time the sale in question in this cause was made, which made the storehouse and lot necessary or proper to the exercise of such business. It matters not what the calling or business of a man may be (and, as we have before said, a calling or business is one of the essentials to entitle a person to an exempted place for its exercise), if he does not use the property for the purpose for which the exemption is given, it will be lost. That the failure to so use the property may result from financial embarrassment does not alter the rule, for the law does not exempt that which a man might like to use, but is unable to use for want of means; but it exempts that which he does use."

See, also, Alexander v. Lovett (Tex.) 69 S. W. 68; Pfeiffer v. McNatt, 74 Tex. 640, 16 S. W. 821; Harle v. Richards, 78 Tex. 80, 14 S. W. 257; Duncan v. Alexander, 83 Tex. 441, 18 S. W. 817; Malone v. Kornrumpf, 84 Tex. 454, 19 S. W. 607; Bowman v. Watson, 66 Tex. 295, 1 S. W. 273.

It was said by the court in Bowman v. Watson:

"If the business was one requiring credit or capital to carry it on,—as that of a merchant,—the question would not be one solely of intent, or, rather, the intent would depend upon the situation of the owner. If he had neither the credit nor means of carrying on the business of merchant, he could have no definite intent to resume that sort of business." 66 Tex. 296, 297, 1 S. W. 273.

In the case before the court the record shows that at the date of the execution of the assignment the bankrupt was insolvent, that he transferred all his property to the assignee for the benefit of such creditors as would accept the assignment, and there is not an intimation that he had any credit whatever. Subsequent to the assignment he did not use the property in controversy for any purpose. He devoted his time and attention to his mother's farming interests, and was making no preparations for a resumption of his mercantile business. In view of these facts, the inference is irresistible that he had no fixed, definite intent to resume the business in which he was formerly engaged. The court is aware that it has been held in this state that the making by an insolvent of a general assignment for the benefit of his creditors does not of itself defeat his right to have exemption of his place of business continue. Tackaberry v. Bank, 85 Tex. 488, 22 S. W. 151, 299; Scheuber v. Ballow, 64 Tex. 166; Gassoway v. White, 70 Tex. 477, 8 S. W. 117. But it was said by Mr. Chief Justice Stayton, speaking for the court, in Tackaberry v. Bank, 85 Tex. 494, 22 S. W. 153:

"A voluntary discontinuance of business ought to be given the same weight on question of abandonment as is given to a removal from the home, and in the one case as in the other the remaining question of fact necessary to be ascertained to determine whether abandonment exists in a given case is that of intention. If the removal of the family from the home or the voluntary discontinuance of the calling or business be without intent, in the one case, again to use the property as a home, or, in the other, to resume the old or to pursue some other business on the property, then abandonment exists."

After all, the question whether a business homestead has been abandoned is one of intent; and the court is of the opinion, from a careful analysis of all the facts, that when the bankrupt executed the deed of general assignment he had no definite intent to resume the business of merchant, and he must, therefore, be held to have abandoned the property which he had previously used for that purpose.

It follows from what has been said that the ruling of the referee should be affirmed, and it is so ordered.

NOTE BY THE COURT. The wife of the bankrupt was not made a party to the proceeding before the referee, and as to her nonjoinder the record is silent. Query: In bankruptcy proceedings before the referee to determine the question of homestead exemption, is the wife of the bankrupt a necessary party? See Jergens v. Schiele, 61 Tex. 255.