### In re MARTIN.

(District Court, W. D. Texas, Austin Division. June 17, 1914.)

In Bankruptcy. No. 593.

BANKRUPTCY (§ 399*)—EXEMPTIONS—BUSINESS HOMESTEAD—WAIVER.

Where an owner of a business homestead assigned all his property for the benefit of creditors, and the assignee entered into possession and conducted the business, and the owner for nearly two years, until he was adjudged a bankrupt, did not engage in any business in which the premises would have been useful to him as a place of business, and he had no reasonable basis for a belief that the business would be returned to him, he could not claim the property as exempt as a business homestead.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 657, 669; Dec. Dig. § 399.*]

In Bankruptcy. In the matter of John Martin, bankrupt. From an order of the referee affirming an order of the trustee, refusing to set aside property claimed by the bankrupt as a business homestead, the bankrupt and his wife appeal. Affirmed.

The question before the court arises upon a petition filed by the bankrupt to review the order of the referee, Dudley K. Woodward, Jr., by which he declined to disturb the order of the trustee in refusing to set aside certain property claimed by the bankrupt as a business homestead.

The facts are fully set forth in the following findings of the referee:

#### "Findings of Fact.

"During the month of December, 1909, John Martin acquired the property in question, being a lot 60 by 90 feet out of the northeast corner of block 9

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of Fulcher's addition to the town of Brady in McCulloch county, Tex., to-gether with the improvements thereon, for a recited consideration of $15,000, he being at that time a resident citizen of the town of Brady.

"On January 12, 1911, the bankrupt executed an 'application for a loan in the sum of $10,000, offering as security therefor a deed of trust upon the property in question, together with other real estate 'owned by him at the time. This application was evidenced by two instruments executed and acknowledged by the bankrupt, true copies of same being hereto attached and marked 'Exhibits A and B,' respectively. On February 21, 1911, pursuant to the application aforesaid, a loan in the sum of $10,000 was made by the John Deere Plow Company to the bankrupt, and a deed of trust lien was duly executed by the bankrupt and his wife and recorded the same day. A true copy of said deed of trust, marked 'Exhibit C' is hereto attached and here referred to for all pertinent purposes.

"There was serious conflict of testimony as to whether or not the bankrupt was occupying the premises in question as a business homestead at the date of the execution of the deed of trust referred to, but that question is not deemed material to the decision of this case, and no finding is here made regarding it.

"On May 1, 1911, the bankrupt and his brother, P. J. Martin, conducting a general mercantile business, moved into the building in question, a portion of which prior to that time had been occupied by the bankrupt as a moving picture theater.

"In the fall of 1911 the bankrupt, still doing business with his brother in the premises aforesaid, negotiated a sale of the entire business, including the building in question, to certain parties living in Hill county, Tex., who, pursuant to such trade, went to Brady and temporarily took charge of the business and building in which the same was located. Shortly thereafter these prospective purchasers made default in the trade and turned back to the bankrupt and his brother the properties of which they had taken possession with a view of closing the trade.

"Very shortly thereafter, on October 16, 1911, P. J. Martin sold his interest in the business to the bankrupt, who became by such purchase the sole owner of same, and who continued to conduct such business in the building in question until the 18th day of December, 1911, at which time he executed an instrument in the nature of an assignment of all of his property, including the building in question, to one A. B. Reagan for the benefit of his creditors. The original of said assignment marked 'Exhibit D' is hereto attached and here referred to for all purposes.

"Immediately after the execution and delivery of the assignment to Reagan the latter entered into possession of the business of the bankrupt, which had previously thereto been conducted in the premises in question, and proceeded under the terms of said assignment to manage, operate, and control said business until December 7, 1912. On the latter date the bankrupt executed a further instrument in favor of A. B. Reagan, amplifying the terms of the original assignment, a true copy of said instrument of date December 7, 1912, being attached hereto and marked 'Exhibit E,' and here referred to for all purposes.

"After the execution of the supplemental transfer dated December 7, 1912, as aforesaid, Reagan continued in full control and management of said business until the February term, 1913, of the district court of McCulloch county, at which time upon a suit filed by Reagan to have the assignment aforesaid construed, judgment was entered relieving Reagan from his trust, and Coke Martin, a son of the bankrupt, was appointed by the court as Reagan's successor. The order of appointment fixed the bond of the said Coke Martin at $5,000, but it does not appear that he ever qualified by giving such bond.

"However, from the entry of the judgment aforesaid until the entry of a judgment at the September term of the district court of McCulloch county in 1913, the said Coke Martin continued in charge and control of the business which had formerly belonged to the bankrupt, and which was conducted in the premises in question. By the judgment entered at the September term of the district court of McCulloch county in 1913, Coke Martin was removed

from the trusteeship aforesaid, and one T. J. Wood was appointed by the court as trustee.

"Upon the appointment of Wood as trustee the bankrupt became dissatisfied with the arrangement and proceeded immediately to have the business closed, and to execute his voluntary petition in bankruptcy, which was filed here on October 10, 1913, and upon which he was duly adjudicated a bankrupt.

"In the petition filed by the bankrupt the property in question is claimed by him as exempt to him as a business homestead under the Constitution and laws of the state of Texas.

"At the first meeting of creditors of the bankrupt, held at the office of the referee, after due notice given, the bankrupt, upon examination by the trustee, stated in open court that he did not intend to contest the deed of trust above referred to in favor of John Deere Plow Company, which had been given in good faith and constituted a valid lien in excess of the value of the property in question.

"On the same day, after the adjournment of the first meeting of creditors, the trustees filed the report on exemptions which is excepted to by the bankrupt and his wife for the reason that the same fails to set aside the business property in question as a portion of the homestead of the bankrupt. The exceptions by the bankrupt and his wife were duly filed and a hearing had thereon on February 11, 1914.

"For the purpose of this decision we may assume that on December 18, 1911, the premises in question constituted the business homestead of the bankrupt. Upon that date the assignment to Reagan was executed, and pursuant thereto Reagan went into actual possession, management, and control of the business formerly owned by the bankrupt and conducted in said premises, and proceeded thereafter to conduct the same under the terms of said assignment for the benefit of Martin's creditors. With the changes above indicated in the instrument under which Reagan held, and as affected by the several judgments of the district court of McCulloch county, the business formerly owned by the bankrupt was conducted by trustees for the benefit of his creditors continuously from the 18th day of December, 1911, until the doors were closed in contemplation of the filing of the bankrupt's petition herein.

"During the interval from December 18, 1911, up to the adjudication of the bankrupt, he was engaged at various times in the occupation of government sheep inspector, as part owner of a collection agency, and as a deputy sheriff, in neither of which callings he used or occupied any portion of the premises in question. At no time during that period was he engaged in any business in which the premises in question would have been useful to him as a place of business. He is still deputy sheriff in McCulloch county.

"During the interval following the assignment to Reagan up to the time of his adjudication he exercised no management or control of the business, and had no active connection with it. He testified that without charge to the business he made a few collections, and for a brief period during Coke Martin's term as trustee, while the latter was ill, he stayed in the store. He testified that this service was rendered as a matter of assistance of his son.

"The bankrupt testified, further, that when live stock was offered in trade to the business during the interval following the appointment of Reagan he customarily passed upon the value of same, as he was experienced in that line of work.

"The bankrupt never at any time subsequent to the assignment to Reagan collected or attempted to collect rent for the use of the premises in question, and never at any time made demand upon Reagan, or either of his successors in trust, for the possession of the premises in question.

"The bankrupt testified upon the hearing that he considered the business his at all times subsequent to the assignment to Reagan, and that he expected it eventually to be redelivered to him; that he intended at some future date to resume or re-enter business in the building in question, but that he had not made or attempted to make any arrangements to do so, nor had he determined what business he would take up.

"There was no reasonable basis for the belief by the bankrupt at any time

after the assignment to Reagan that the business would be returned to him. It was hopelessly insolvent at the time of the assignment, and remained so continuously until the filing of the petition in bankruptcy and to pay the debts of the business pursuant to the terms of the assignment made to Reagan for the benefit of Martin's creditors would have required the sale of all of the property described in the assignment, including the premises in question.

"Aside from the unsupported statement of the bankrupt to that effect there is no testimony tending to show that he intended to re-enter business in the premises in question.

"I find as a fact that the bankrupt had not at the date of the adjudication any bona fide intention of resuming any business in the building in question.

### "Conclusions of Law.

"On the law of the case I conclude that the bankrupt has not used or occupied the premises in question as a principal place of business since December 18, 1911, at which time he abandoned same as a business homestead.

"I further conclude that the expressed intention of the bankrupt to go into business in the premises in question, unsupported by other testimony and with· out any testimony as to the nature or character of business contemplated, or of arrangements made therefor, or in contemplation, is sufficient to impress the premises in question with homestead claim in favor of the bankrupt.

"The questions of law presented by this record have arisen frequently. in Texas, and, in spite of some apparent conflict, seem now to be well settled by authoritative opinions of both state and federal courts. They are as follows:

"First. Did John Martin, by the assignment of December 18, 1911, and his subsequent conduct, abandon his business homestead?

"Second. If abandonment had not taken place prior to the date of adjudication, had the bankrupt at such date that character of intention, coupled with present or prospective ability to re-enter business, which would enable him to hold the premises in question as a business homestead?

"In the case of In re Flannagan, 117 Fed. 695, 9 Am. Bankr. Rep. 140, under facts very similar to those in the case at bar, it was decided by the District Court of the United States for the Western District of Texas, Waco Division, that the bankrupt was not entitled to the exemption claimed as to his business homestead. The facts in the present case are stronger than in the case cited, and the conclusion there reached is decisive here.

"The leading cases are collected in that opinion, and, as there has been no departure from them since it was handed down, it is not necessary to cite additional authorities here.

"It is earnestly contended by counsel for bankrupt and his wife that the conduct of the business by Reagan and his successors was the conduct by Martin of his business through Reagan and his successors as agents or representatives of Martin, by reason of which the homestead character of the property was never lost. The proposition seems to me unsound. The conveyance to Reagan was not different from the ordinary assignment for creditors, the result of which is to deprive the assignor of title to and possession of the property conveyed, for the purpose of applying the proceeds of same to payment of his debts.

"Such transfers are ordinarily made upon insistence of creditors, and because they are not content that the assignor continue to operate the business. The very purpose and invariable effect of such conveyances is .to divest the assignor of title to and control over the business, and to vest same in the assignee, who thereafter conducts same, not as the business of the assignor, but as the business of the creditors represented by himself as trustee. That the conduct of such a business by an assignee for a period of nearly two years without objection to that course during the interval by the assignor, and without any claim by the assignor during that period to the right to use the premises for the conduct of his own affairs, is inconsistent with any claim to said premises by such assignor as a business homestead seems to my mind

clear, and I therefore conclude that any claim which the bankrupt may theretofore have had to such premises as a business homestead was abandoned by him in executing the assignment to Reagan and suffering the business to be thereafter conducted in the premises in question in the manner hereinbefore set out.

"I, therefore, conclude that the exceptions filed by the bankrupt and his wife to the report of the trustee should be in all things denied and overruled, and that the report of the trustee upon exemptions should be in all things approved and confirmed."

Shropshire & House, of Brady, Tex., and Caldwell & Caldwell, of Austin, Tex., for bankrupt and wife.

Etheridge, McCormick & Bromberg, of Dallas, Tex., for William Butterworth, a creditor.

Fiset, McClendon & Shelley, of Austin, for Trustee.

MAXEY, District Judge (after stating the facts as above). The order of the referee in this case is affirmed on the authority of In re Flannagan (D. C.) 117 F. 695. The decision in Flannagan's Case was based upon Shryock v. Latimer, 57 Tex. 674, and other authorities therein cited. The case of Shryock v. Latimer was decided in 1882. In Alexander v. Lovett, 95 Tex., at page 664, 69 S. W., at page 69, decided in 1902, it was said by the court that:

"The decision, in the case of Shryock v. Latimer has never been overruled, nor the principles there stated modified, and it controls this case."

And it may be said that it is controlling in the case now before the court.

Order of referee affirmed.