HENRY MARTEL AND OTHERS V. CHARLOTTE SOMERS.

Where suit is brought in the name of a nominal plaintiff for the use of another person, the real plaintiff, the substitution by amendment of the name of such other person as the sole plaintiff does not make a new party to the cause in a proper sense. The case of Price v. Wiley, 19th Tex. Rep., 142, cited and approved on this point.

Admissions of a judgment debtor, who is co-defendant with his vendees in a suit to subject to the judgment property sold by him, are admissible in evidence, if made while he was in possession of the property, to prove ownership of the judgment by the plaintiff and that his own conveyance of the property was fraudulent.

The conveyance of his homestead by a debtor cannot be deemed to be in fraud of his creditors, inasmuch as it is not liable to be taken in execution or to forced sale for the payment of debts. The case of Wood v. Chambers, 20 Texas Rep., 247, cited and approved on this point.

With regard to the question as to what constitutes notice of fraud in a conveyance, while it is settled that vague and general assertions, resting on mere hearsay and made by strangers in authority and interest, may be disregarded, and will not bind the conscience of the purchaser or affect his legal or equitable rights, even when true in point of fact; yet, a direct statement to a purchaser of the existence and nature of an adverse claim or title will operate as notice whether it be made by or on behalf of the holder of the adverse title or by a mere stranger.

See this case upon the subject of notice in general,—from whom it may proceed;—and as to information sufficient to put a party upon inquiry so as to be equivalent to notice.

It seems that a fact may acquire such notoriety as to constitute notice, or to put a party upon inquiry equivalent thereto;—but an authoritative decision on this point is reserved.

It is a principle of universal application that the statutes of limitation do not begin to run until the cause of action accrues.

In a suit to subject to the satisfaction of a judgment which had been appealed to this court certain property which had been sold by the judgment debtor in fraud of his creditors, the cause of action did not accrue until the final disposition of the appeal in this court; and until then the statute of limitations did not begin to run against the plaintiff.

Where a judgment creditor sues for the purpose of setting aside the legal title to property and of subjecting the property to the judgment, upon the ground that the title was conveyed by the debtor in fraud of his creditors, in which suit the plaintiff assumes the burden of proof, it is not incumbent on the defendants claiming the property under such title to prove payment by them of the purchase money mentioned in their deeds.

APPEAL from Fayette. Tried below before the Hon. James H. Bell.

This suit was originally instituted on the 19th of April, 1856, by Rudolph Brock and Rica Hernshein as administrators of Joseph Hernshein, deceased, for the use of Charlotte Somers, the appellee, against Henry Martel, James T. Patton, administrator, and Charles Martel, infant heir of Frederick Martel, deceased, William G. Webb, John T. Harcourt and A. R. Jones, defendants.

On the 17th of March, 1849, the said J. Hernshein recovered a judgment in the District Court of Fayette county against Henry Martel for the sum of $2948, besides costs of suit. Martel appealed the judgment to the Supreme Court, in which there was judgment of affirmance at the December Term, 1849. But at the December Term, 1852, of the Supreme Court, the judgment of affirmance was vacated for the reason that it was rendered after the death of Hernshein, the appellee. At the November Term, 1855, of the Supreme Court, the appeal was finally dismissed for the reason that the appellant had not caused the representative of Hernshein to be made a party defendant to the appeal.

The present suit was instituted to subject to this judgment certain land in Fayette county conveyed by Henry Martel in 1847, after the institution of said suit but before the rendition of the judgment, to his brother Frederick Martel, and which land was sold under order of the County Court by Patton as administrator of Frederick Martel, on the first Tuesday in January, 1854, when the defendants Webb and Harcourt became the purchasers, who a few months afterwards sold to the defendant Jones, who was in possession at the institution of this suit.

The petition alleged fraud in the conveyance by Henry Martel to his brother Frederick, and charged notice thereof upon all the other defendants. The pleadings on both sides were multifarious and complicated, but, in view of the opinion, it is not necessary to specify them particularly.

The defendants denied the representative character of the nominal plaintiffs as the administrators of Hernshein, and the usee, Charlotte Somers, alleged by amended petition her exclusive ownership of the judgment, dismissed as to the nominal plaintiffs,

and continues to prosecute in her own name as plaintiff; to which the defendants excepted on the ground that the allowance of the amendment would be the commencement of a new suit, and they would be precluded from the benefit of the lapse of time between the original institution of the suit and the filing of the amendment, and for other reasons.   The exceptions were overruled.

The defendants denied the plaintiff's ownership of the judgment in favor of Joseph Hernshein against Henry Martel; in order to prove which the plaintiff gave in evidence the admissions of Henry Martel made in 1851, to the effect that he knew the plaintiff was the owner of the judgment, which he was sorry that he could not pay, but that in an unguarded moment he had conveyed his property to his brother Frederick.   By other evidence it appeared that Henry Martel was then in possession of the land, and had been so in possession ever since his purchase of it in 1846.

The land consisted of two tracts, one of which, at the time of the conveyance from Henry to Frederick Martel, was the homestead of the former, who was a man of family;—which was insisted on by the defendant as precluding the plaintiff from relief so far as that tract was concerned.

The defendants, Webb, Harcourt and Jones, denied notice of any fraud in the conveyance from Henry to Frederick Martel; to establish which the plaintiff proved that the fraudulent character of the conveyance was notorious in the neighborhood of the land, and was common talk in Lagrange, where the defendant Webb then resided; that Webb was attorney for Martel in the suit of Joseph Hernshein against him; that at the sale of the land in 1854 by Patton as Frederick Martel's administrator, at which Webb and Harcourt purchased the land, notice was publicly given by an attorney of the plaintiff, that the property was subject to the Hernshein judgment; that the defendant Jones was cautioned not to buy the land, and was informed by a witness, not interested in the property, of difficulties in the way of obtaining a good title, though not specially informed of the fraud in Henry Martel's conveyance.

The defendants objected to this evidence as inadmissible to establish notice.

The defendants pleaded the statutes of limitation of three, five

and ten years, and also that any lien which the judgment against Henry Martel may have had, was lost by the lapse of more than twelve months between the final disposition of the case by the Supreme Court, in November, 1855, and the date of the amendment of the petition, filed May 28, 1857, by which Charlotte Somers made herself the party plaintiff instead of merely the usee.

It appeared from the evidence, that after the conveyance from Henry to Frederick Martel, they both continued to live upon the land, except during a temporary absence of Frederick Martel to California, until the death of Frederick in the Spring of 1851, from wounds inflicted by his brother Henry, who thereupon fled the country, and the land was taken in possession by the administrator of Frederick, and continued in his possession and that of the defendants Webb, Harcourt and Jones, up to the institution of this suit.

No evidence was introduced by the defendants to prove that they had paid the purchase money for the land, other than the recitals to that effect in their deeds. With reference to this question, the court below instructed the jury,—"On the subject of innocent purchasers, the rule is that no man can claim to be an innocent purchaser unless he shows that he paid the purchase money before the institution of the suit, and the recital in the deed that the purchase money was paid is not enough. It must be shown by evidence outside of the deed that the purchase money was paid. If the original sale from Henry Martel to Frederick Martel was fraudulent and without consideration, and if these defendants, Webb, Harcourt and Jones, have not shown payment of the purchase money, outside of the recitals in the deeds, then the plaintiff is entitled to recover, unless Frederick Martel and those claiming under him have had three years possession, &c."

There was a verdict for the plaintiff, whereupon the court decreed the land to be sold and the proceeds to be applied to the payment of the judgment. The defendants moved for a new trial, which was refused, and they appealed.

*John G. Robson*, for the appellant:—The transfer from Henry

to Fred. Martel was made prior to the rendition of the judgment in favor of Joseph Hernshein, and consequently the judgment was no lien upon the land. There was no estate in Henry Martel on which the lien could fasten. No matter how fraudulent the conveyance from Henry to Fred. may have been, it was good between the parties, and it could not be said that after the transfer he had any estate in the land conveyed. (Hartley's Dig., art. 1335; 4 Cowan, p. 599; 9 Id. 120; 5 Id. 547; 13 J. R., p. 471; 15 J. R., 464; 18 J. R., 515; 16 S. & R., 18; 1 Iowa, Green., 131; 8 Leigh, 272; 27 Miss., 5 Cush., 481.)

The plaintiff then having acquired no lien upon the land by virtue of her judgment, cannot maintain this action. If it be true, as alleged in the original and amended petition, that the sale from Henry to Fred. Martel was fraudulent, and that the purchasers under Fred's administrator were affected with notice of the fraud at the time of their respective purchases, then it must follow that all these sales were absolutely null and void as to Henry's previous creditors; and the plaintiff could have levied an execution on the land, and sold it to satisfy her debt, without the necessity of a proceeding like the present. There being no lien, there was nothing to connect the judgment with that particular tract of land, so as to entitle the plaintiff to a decree of the court ordering the sale of the same to pay that particular debt. The purchaser of the land at execution sale, could alone maintain this proceeding. The defendant had the right under the law to designate the property to be levied on, and if he failed to make the designation, it was the duty of the Sheriff to make a levy in the manner pointed out by law. (Hart. Dig., art. 1327.)

This provision of the law would be thwarted, if such a proceeding as this should be tolerated, without even the issuance and return of an execution; for the judgment creditor, having no lien to support his claim, could procure an order of sale of any part of the debtor's property to which he might take a fancy.

There was no proof that Charlotte Somers was in fact the owner of the judgment. It will not be pretended that the admissions of the administrators of Joseph Hernshein in the original petition constitute evidence of ownership in Mrs. Somers, for

there is no proof that these administrators were the only surviving heirs of the decedent, and their admissions in their representative capacity would not be permitted to affect prejudicially or otherwise the estate they represented. The only evidence of ownership that went to the jury (and that was excepted to by defendant) was an admission made by Henry Martel.

That admission and the circumstances under which it was made were as follows: "In 1851, in the town of Lagrange, Charlotte Somers said to Henry Martel, *in tears*, 'You know, Mr. Martel, that the money in the Hernshein suit was my separate property;' and he said he did know it and was sorry it was not in his power to help her, and that in an unguarded moment he had conveyed his property to his brother, Fred. Martel." The admission was, we contend, inadmissible as evidence of ownership.

1. Because it was not an admission of facts, but of a conclusion of law.

2. Because the admission was made three years after the deed from Henry to Fred. Martel had been executed.

A conveyance can be set aside as fraudulent against creditors, only at the instance of a person who was a creditor at the time of the execution of the conveyance. (Ede v. Knowles, 2 Y. & C., C. C., 178; Dart on Vendors, p. 426.)

Such being the law, the admission referred to having been made in 1851, three years after the making of the transfer, and relating, as it does, to the ownership of the Hernshein debt *at the date of the conversation*, was inadmissible in evidence. (See, also, 3 Bibb., 9; 4 do., 290; 3 Litell's R., p. 14.

There was no proof that Webb & Harcourt had any notice, either actual or constructive, that the deed from Henry to Fred. Martel was executed for the purpose of defrauding plaintiff or any of his creditors.

In arguing this point it becomes necessary to ascertain, first, what is sufficient to constitute notice. This is a point of some nicety, and resolves itself sometimes into matter of fact and sometimes into matter of law. (1 Story, sec. 399; 2 Johns. Ch. R., p. 190; 1 Hare's R., p. 43.)

We are safe, however, in stating that all the authorities are

agreed that vague and .indeterminate reports and rumor, and even suspicion of notice, though a strong suspicion, are not sufficient to constitute notice. (2 Sumner's C. C. R., p. 100; 1 Story's Eq. Jur., sec. 400; 2 Sugden, p. 537; 6 Barbour's Sup. Ct. R., p. 60; 4 Kent, 6 ed., pp. 171, 172; 6 Wend. R., p. 226; 8 J. R., p. 137; 1 McLean's C. C. R., p. 118.)

It has even been decided that a statement made to the vendee of a tract of land that the title of the vendor is affected by equities in favor of third persons is not sufficient to impair the legal rights of a purchaser, or deprive him of equitable protection. (Wildgoose v. Wayland, Gould., 147; 3 Ves., 478; 1 Mod., 300; 1 Vern., 363; 26 Maine, 484; 4 Dessessure, 87.)

Nor does the statement that the land for which the purchaser is in treaty has been previously sold to some one else amount to a sufficient notice. (7 Watts, 361; Ib., 10, 67, 274; 5 W. & S., 284.)

The clearest exposition of the question of notice which I have been able to find, is contained in Vice Chancellor Wigram's opinion in the case of Jones v. Smith, 1 Hare, p. 55. He says "If in short there is not actual notice that the property is in some way affected, and no fraudulent turning away from a knowledge of facts which the *res gestæ* would suggest to a prudent mind,—if mere want of caution as distinguished from fraudulent and willful blindness is all that can be imputed to the purchaser, then the doctrine of constructive notice will not apply, then the purchaser will in equity be considered, as in fact he is, a bona fide purchaser without notice."

Before dismissing the question of notice, we would once more call the attention of the court to the statement made by Mr. Burns, the attorney of plaintiff, at the administrator's sale. That statement was that the plaintiff had a lien on the land by virtue of the Hernshein judgment. This was all that was said, and this was the avowed reason why the sale was forbid.

There is no better settled rule of law than this, that when one having title stands by while another purchases and does not disclose his own title and forbid the sale, he will be estopped from ever

afterwards setting up his title in opposition to the purchaser. 20 Tex. R., 648.

The only ground then on which this proceeding could be maintained, was, that the judgment gave the plaintiff a lien upon the land; for, so far as the question of fraud is concerned, she is estopped by the silence of her attorney, and by his declaration in reference to the lien, at the time of the sale. We have already seen that no lien in fact existed, and hence the plaintiff is precluded from recovering in this action.

Again, the commencement of this suit (if it has ever yet had a legal commencement) was the date of the filing of Charlotte Somers' first plea when she made herself a party. This was on the 28th May, 1857, more than twelve months after the final judgment in the Supreme Court. Even then, if a lien had ever existed, the same was lost by the laches of plaintiff. (Hart., art. 1335.).

*J. T. Harcourt*, also for the appellants. To show the inadmissibility of Henry Martel's declarations to impeach his own deed, counsel cited, 3 Phil. Ev., Cow. & Hill's notes, 276; 2 Hayw. R., 292; 4 Serg. & R., 174; 9 Id., 47, 53, *et seq.;* 11 Johns., 437; 4 Mass. R., 707; 12 Id., 438; and numerous other authorities.

*W. G. Webb*, also for the appellants.

*Tate & Gates*, for the appellee.

WHEELER, C. J. Though the suit was instituted in the name of the administrators of Hernshein, it was for the benefit of Mrs. Somers. She was the real party plaintiff; and the amendment that substituted her name as sole plaintiff was not properly the making of a new party. (Price v. Wiley, 19 Tex. R., 142.) There was no error in permitting the amendment.

It is objected that the plaintiff has not shown herself entitled as the beneficiary in the judgment recovered by Hernshein v. Martel. But it is in proof, that after its rendition the defendant, Martel, expressly admitted her right. As between the parties this was sufficient evidence of title in the plaintiff; and it is *prima*

Martel v. Somers.

*facie* sufficient to enable her to maintain this suit. The admissions of Henry Martel, while he continued in possession of the property, were admissible in evidence, as well to prove title in the plaintiff as that he acted fraudulently in making the conveyance.

The plaintiff seeks to set aside the conveyance from Henry to Frederick Martel, and the purchasers under the latter, on the ground that it was in fraud of her rights as the judgment creditor of the former, in order to subject the property to the satisfaction of the judgment. To make out her case, it was necessary to prove the purpose to hinder, delay, or defraud creditors, and to fix notice of the character of the conveyance upon the subsequent purchasers. The evidence leaves little room to question that the purpose of the conveyance from Henry to Frederick Martel, was to defraud the creditors of the former, and particularly the plaintiff. But it is to be observed, the homestead of Henry was included in the conveyance, and as to that, according to the decision of this court in Wood v. Chambers, (20 Tex. R., 247,) the conveyance cannot be deemed fraudulent as to creditors, because the homestead was not liable to be taken in execution or to forced sale for the payment of debts. Yet the judgment sets aside the conveyance, as well of the homestead as of the land not included in the homestead. As, therefore, the judgment is erroneous and must be reversed upon this ground, it is material to notice only such questions presented by the record and in argument, as will arise for adjudication upon another trial. Of these, the principal is that of notice to the defendants who were purchasers subsequently to the transaction between the Martels. A portion of the evidence upon this point consisted of the statements of persons acting without authority or interest, and the notoriety in the community of the fraudulent character of the transaction between the Martels. And it is objected that this character of evidence was not competent to prove notice.

The difficulty of laying down any precise rule as to what will amount to notice, has been often experienced and acknowledged. Much must depend on the circumstances of each particular case. While it is settled that vague and general assertions, resting on mere hearsay and made by strangers in authority and interest, may

be disregarded, and will not bind the conscience of the purchaser, or affect his legal or equitable rights, even when true in point of fact, yet a direct statement to a purchaser of the existence and nature of an adverse claim or title, will operate as notice, whether it be made by or on behalf of the party holding the adverse title, or by a mere stranger.  It has been said that notice cannot be binding unless it proceed from a person interested in the property and in the course of a treaty for its purchase.  But this doctrine, it has been well said, must be understood as applying to notice in its limited sense, as distinguished from knowledge, or such information as is substantially equivalent to knowledge, (Hare and Wallace's notes to Le Neve v. Le Neve, Leading Ca. in Eq.)  If it be shown that the purchaser knew or was informed of the existence of the adverse claim or title, it cannot be necessary to prove notice, and it is immaterial whether his knowledge was obtained from the parties in interest, or from third persons, (Ibid.)  From whatever quarter the information may come, it will be sufficient, if it be so definite as to enable the purchaser to ascertain whether it is authentic, and sufficiently clear and authentic to put the purchaser on inquiry, and to enable him to conduct that inquiry to the ascertainment of the fact.  It is not necessary in any case, to constitute notice, that it should be in the shape of a distinct and formal communication, and it will be implied in all cases where a party is shown to have had such means of informing himself, as to justify the conclusion that he has availed himself of it.  Whatever, therefore, is sufficient to direct the attention of a purchaser to the prior rights and equities of third persons, and to enable him to ascertain their nature by inquiry, will operate as notice. (Ibid., L. C. in Eq., Vol. 2, Part 1.)  It is evident that the statement of third persons may be sufficient for this purpose; and it would seem that the existence of a fact may acquire such notoriety as to have the same effect.  But it was unnecessary to rest the question of notice upon the notoriety of the fraudulent character of the transaction between the Martels; and it is unnecessary to decide whether such evidence can amount to notice, as there was other evidence of notice of a less questionable character.

As respects the defence of the statute of limitations, it is to be

Martel v. Somers,

observed that it is a principle of universal application, that the statute does not commence to run until the cause of action accrues; and that, in this case, was not until the case of Martel v. Hernshein was finally disposed of in this court. The plaintiff's right of action was suspended by the appeal; and while it was so suspended, she had no means of enforcing her claims. Consequently, the statute did not commence to run. (Reynolds v. Lansford, 16 Tex. R., 286.)

Again; as respects the necessity of proof by the defendants, of payment of the purchase money, it is to be observed that this is not the case of a subsequent purchaser seeking to have his title preferred to a prior conveyance, on the ground that he is an innocent purchaser. If it were, the doctrine that he must prove payment of the purchase money would apply, unless he was relieved upon the ground that, as a purchaser at an administrator's sale, the doctrine of *caveat emptor* applies, and he was bound absolutely to the payment of the purchase money, and could not be relieved upon failure of title. But here the plaintiff seeks to set aside a legal title upon the ground that it was fraudulent as to creditors, and she takes upon herself the burden of proof. It might be material for the plaintiff to prove that the conveyance was without consideration; but it did not devolve on the defendant to prove payment of the purchase money, in order to enable them to maintain their title, if they were not affected with notice of the fraudulent conveyance. If they were affected with notice, payment of the purchase money would not protect them; and upon this point the charge of the court was erroneous. The judgment is reversed, and the cause remanded for further proceedings.

Reversed and remanded.