J. T. DUNCAN ET AL. V. S. ALEXANDER ET AL.

No. 3235.

**1. Business Homestead.**—The principle is well established in regard to a business homestead distinct from the residence in a city or town, that it must be reasonably necessary to the business or calling of the head of a family.

**2. Same—Cases Adhered to.**—Shryock & Rowland v. Latimer, 57 Texas, 677; Wynne v. Hudson, 66 Texas, 1; Hargadine v. Whitfield, 71, Texas, 489; and Pfeiffer v. McNatt & March, 74 Texas, 641, adhered to.

**3. Fact Case—Business Homestead Negatived.**—See facts where held evident that the business homestead of the claimant did not cover the house and lot in controversy. Its use had been abandoned and the business transacted elsewhere.

APPEAL from Fayette. Tried below before Hon. H. TEICHMUELLER. The opinion states the case.

*J. C. Brown* and *J. T. Duncan,* for appellants.—The court erred in refusing to give the following charge asked by appellants, to-wit: "You are charged, that the undisputed facts in this cause show that the portion of lots in block 33, of La Grange, occupied by Homuth and Rethke, is not a part of the homestead of S. Alexander, nor is it his place of business. It was therefore subject to levy and sale, and you will find a verdict for plaintiffs as to said property." Because: (1) The uncontradicted evidence showed that S. Alexander had a residence homestead in lot 258, in block 33, and that the same was entirely disconnected from the lot in controversy. (2) The evidence showed without dispute that said S. Alexander had a house and lot separate from the one in controversy, in which he carried on his business and had carried it on for a number of years prior to the levy. (3) It was shown without dispute that the house in controversy had not been used for business purposes by said S. Alexander for a number of years, and had been constantly rented since 1884.

*J. Lane* and *A. L. Jackson,* for appellees.—The temporary leasing of a place of business of the head of a family, with the intention to return to it and resume his business as soon as he was able to do so, there then existing a strong probability that he would soon be able to resume business, does not constitute an abandonment thereof, and does not subject same to seizure and sale for debt. This was the condition under which appellee S. Alexander leased the portions of lots 223 and 230, and the improvements thereon, involved in this cause. Cline v. Upton, 59 Texas, 27; Inge & Boring v. Cain, 65 Texas, 75; Bowman v. Watson, 66 Texas, 295.

COLLARD, JUDGE, *Section A.*—This suit was brought May 2, 1890, by appellants, J. T. Duncan and J. C. Brown, against S. Alexander,

Jonas Alexander (a minor), L. S. Homuth, and C. Rethke, alleging that the plaintiffs were the owners in fee simple of lots 2 and 3, in block S, in the Elbin addition to the town of La Grange, and part of lots 223 and 230, in block 33, in the old town of La Grange, that is twenty feet on the public square, and running back perpendicularly across the lots to the south line, known as the beef market; that while S. Alexander was the owner of the land it was sold under execution on a valid judgment against him, and bought by plaintiff, to whom deeds were duly made; that Alexander by his tenants had possession of the same to the present time; that Homuth and Rethke set up some kind of a claim to the property as tenants of Alexander. Prayer for all the property and for rents. S. Alexander and Jonas Alexander, by his guardian ad litem, filed demurrer and general denial. Homuth and Rethke disclaimed. Verdict and judgment for plaintiffs for lots 2 and 3, in block S, and for defendant S. Alexander for the portion of lots 223 and 230 sued for as a business homestead. Plaintiffs appealed.

All the property was sold to plaintiffs as alleged under execution, by virtue of a valid judgment in favor of G. Seligson & Co. against S. Alexander, rendered December 5, 1887, levied on the 23d day of May, 1889. It was agreed that Alexander was the owner of the property at the date of the levy. The beef market property is alone involved in this appeal.

There are several assignments of error, but as in our judgment one of them is controlling, we will consider it alone. It is to the effect that the verdict was unsupported by the evidence, as it showed that the property was not the business homestead of defendant S. Alexander.

Alexander has and had a residence homestead in La Grange separated from the property in suit by a lot belonging to one Tipps. Alexander owned two houses adjoining each other on lots 223 and 230 in La Grange, and he at one time carried on a mercantile business in them, but in the fall of 1884 he moved all his merchandise out of the house in controversy into the other, and has since constantly rented the same, occupying the other house as his place of business. S. Alexander's testimony presents the facts relating to homestead claim, and is as follows:

"I am a married man and the head of a family. I own a homestead in La Grange, where I reside. It is a part of block 33, and fronts on Washington Street. I own forty feet fronting on the public square. It is parts of lots 225 and 230, in block 33, and runs back about 160 feet. I purchased the property in 1857. I have merchandised in La Grange thirty-eight years. I first built the house I now occupy many years ago. When my business got so large I built the house involved in this suit, four or five years after the first. I just extended the sleepers of the first house and joined the two together. The one in this suit is larger by several feet than the first. I claim the house as my place

of business. Several years ago, seeing that my business did not pay, I moved all of my goods out of the house involved in this suit and moved them into the house I now occupy. I have since been renting it out, constantly since the latter part of 1884, but I have never abandoned it as a place of business. I have rented it with the understanding that when I wanted the property back I could get it at once. It has been rented for a butcher shop since 1885. I have always intended when I got out of debt that I would resume business again in both houses. I have never abandoned it. I use portions of the business lots at the back side for garden purposes. I have raised a few Irish potatoes there, and a few onions. I have always intended and intend now to resume business in both of these adjoining store rooms as soon as I extricate myself from my present embarrassment. Business men of Galveston, friends of mine, have promised to let me have any goods I want whenever I get ready. Personally my name has not suffered; my credit is still as good as ever."

Cross-examined, he said: "In 1887 I failed in business and made an assignment. I had a store in Giddings which was run by my son-in-law, Pincres Zass, when the assignment was made. I also ran a store here in La Grange, and occupied the same house I am now in and have occupied for many years. When I assigned I turned my La Grange stock over to the assignee. I got my son in Houston to buy the stock of goods from the assignee, and I removed into the store house and sold the goods on commission. I have since sold other goods for other parties on commission. I have a stock of goods in my store house at present worth $7.50. The stock of goods I had in it last year was worth $17.50. The one I had in 1888 was worth I suppose $50. The house I now occupy for my store house is 48 feet long, 18 feet wide, and 12 feet to the ceiling. It is large enough to hold the stock of goods I now have, or to hold any stock of goods I have had since 1884. In 1884 I rented this house to Kiber. He made candy in it and sold candy in it. I got $17.50 per month rent from Kiber. After Kiber left I rented it to Good for a butcher shop. After Good sold out to Little & Little I rented it to them, and when they sold out to Homuth & Rethke I have rented it to them ever since. I rented it all along after Kiber quit for $15 per month. The house is subject to my order at any time I want to use it. I recognize the map shown me as a correct map of my property on block 33. My residence is on lot 258. The homestead is separated from the business lots by the Tipp lot, No. 251. The house marked 20x53 is the butcher shop. The one marked 20x48 is the store house I now occupy, and I now sell my goods in it. My daily sales amount sometimes to 10 cents a day, some days 25 cents, and some days nothing. The map shows where the well is, and where the kiln for cooking sausage is. I did not raise any potatoes on the back part of

the business lots last year nor the year before.   During the last year I sold the two houses to a Mr. Campbell for $2300.   The trade was closed, but Campbell backed out when he heard that plaintiff claimed the lot.   I was going to sell it to pay my debts with."

The following is a copy of the map:

We do not think the evidence of plaintiff himself supports the verdict. The principle is well established in regard to a business homestead distinct from the residence in a city or town, that "it must be 'reasonably necessary' to the business or calling of the head of a family." Shryock & Rowland v. Latimer, 57 Texas, 677; Wynne v. Hudson, 66 Texas, 1; Hargadine v. Whitfield, 71 Texas, 489; Pfeiffer v. McNatt & March, 74 Texas, 641. In 1884, long before Alexander failed in business, he himself decided that the property in controversy was not necessary to his business. He says: "Several years ago, seeing that my business did not pay, I moved all of my goods out of the house involved in this suit, and moved them into the house I now occupy. I have since been renting it out, constantly since the latter part of 1884." At the time this was done he had not been disturbed by levies; his leaving the house was not enforced by compulsory process; he had not then failed in business; but it is seen that his business would not justify the use of both the houses, and that the house he now occupies has been sufficient for his trade since 1884. He elected which house he would use, and voluntarily left the one in controversy as being unnecessary in his business. When it ceased to be needed as a place of business for the business he was then carrying on, and he left it because of that fact, it lost its homestead character. This state of things continued until in 1887, say three years, during which time the house and certain parts of the lot were devoted to other purposes, and during which time he had pronounced it unserviceable and unnecessary to his business. He testified that he did not abandon the property, but the facts show that he did. The law requires that the occupant must have a calling or business to which the property must be reasonably necessary. Applying this principle to the defendant's case, we do not see how the business homestead right can be maintained in his favor. But plaintiff's business had not improved in 1888, when the execution against him was levied. It was still not used in the business or required for that purpose. The rights of the parties were fixed by the facts existing at the time of the levy, at which time and for a long time prior thereto Alexander had a business homestead other than this, sufficient, he says, for his business. Further comment on the testimony is not necessary. We are constrained to conclude that the verdict should have been set aside and a new trial granted.

The judgment should be reversed and the cause remanded.

*Reversed and remanded.*