## THOMPSON et al. v. McCONNELL et al.

### (Circuit Court of Appeals, Fifth Circuit. · February 26, 1901.)

### No. 1,007.

1. HOMESTEAD—EXEMPTION—FRAUDULENT CONVEYANCE.
   A rural homestead of an insolvent, being exempt from execution by positive statute (Rev. St. Tex. 1895, art. 2396), cannot be the subject of a fraudulent conveyance as against the grantor's creditors.

2. SAME—WHAT LAW GOVERNS—FEDERAL COURTS.
   What real estate is subject to or exempt from execution issued from federal courts is governed by the law of the state where the real estate is situated.

3. STATE STATUTES—CONSTRUCTION BY FEDERAL COURTS.
   Decision of a state court showing the state's policy to liberally construe its exemption statutes is binding on the federal courts in considering whether or not certain real estate in such state is subject to execution issued out of the federal courts.

4. HOMESTEAD—CONVEYANCE—INTENT TO ABANDON—FRAUD.
   Where an insolvent conveys the homestead to his wife, and she thereafter contracted to convey the land to B. in exchange for cattle, but, though the cattle were delivered, and possession of the homestead given, the sale was not completed, but was subsequently rescinded, such attempted sale did not show an attempt to abandon the homestead, and thus raise a presumption of fraud in the disposition of the homestead as against the husband's creditors.

5. SAME—EXCESS OF LAND CONVEYED—INTENT.
   Tex. Rev. St. art. 2396, provides that a rural homestead of a debtor to the extent of 200 acres shall be exempt from sale on execution. _Held,_ that the fact that a deed of an insolvent homestead calling for only 200 acres in fact conveyed 220 acres did not render the conveyance void as against the husband's creditors, where it appeared that neither the husband nor wife had actual knowledge of the exact amount of land included, and the first knowledge of the excess arose from a survey made after suit was brought.

6. SAME.
   Where a deed to a homestead conveyed 20 acres in addition to the amount which was exempt, which was inadvertently included, the rule that a deed fraudulent in part as against the grantor's creditors is fraud-

107 F.—3

ulent in toto did not apply, since such rule is not applicable to an excess of a few acres inadvertently included.

7. SAME—CONVEYANCE BY HUSBAND TO WIFE.
   Tex. Const. art. 16, § 50, and Tex. Rev. St. 1895, art. 636, requiring the wife to consent to and join in a conveyance of a homestead, and articles 635, 4618, requiring an acknowledgment by her on privy examination, did not preclude a husband from conveying the homestead directly to his wife, since, as she is not required to join in such conveyance, the statutes enacted for her protection and benefit have no application.

8. SAME—LIMITATION OF ACTIONS—SUSPENSION—MARRIED WOMEN.
   Tex. Rev. St. 1895, art. 3342, declares that peaceable and adverse possession of real estate for five years bars a recovery, and section 3201 provides that such statute shall not run against a married woman. Laws April 1, 1895, abolished such exception, but provided that the disability of married women shall continue for one year from and after the passage of the act, and that they shall have, therefore, the same time to sue as is allowed others by the provisions of the act. *Held*, that limitations did not begin to run against an action to recover real property by a married woman until one full year had expired after the act took effect, and that a contention that the time elapsed before the adoption of the amendment should be counted allowing married women one year to sue after the adoption of the amendment was not sustainable.

9. SAME—DIRECTION OF VERDICT.
   Where in an action for the recovery of real property it would have been the court's duty to have set aside a verdict for the defendants if returned, the court properly directed a verdict in favor of plaintiffs.

In Error to the Circuit Court of the United States for the Northern District of Texas.

J. M. McCormick (P. B. Ward and Wendel Spence, on the brief), for plaintiffs in error.

H. N. Atkinson, for defendants in error.

Before PARDEE and SHELBY, Circuit Judges, and TOULMIN, District Judge.

SHELBY, Circuit Judge. This is an action of trespass to try title, and was brought July 9, 1898, in the district court of Bosque county, Tex., by H. G. McConnell, Mrs. M. A. Hudson, and her husband, W. T. Hudson, citizens of Texas, against W. C. Thompson and others. The defendants in possession of the land sued for were the tenants of L. V. F. Randolph, who, on motion, was made party defendant as landlord. Rev. St. Tex. 1895, art. 5253. Randolph is a citizen of the state of New Jersey. On his petition the case was removed to the circuit court of the United States for the Northern district of Texas. It was alleged in the petition that the plaintiff M. A. Hudson was, on January 1, 1897, lawfully seised and possessed of 200 acres of land, with improvements thereon, described in the petition, situated on the Brazos river, Bosque county, Tex. It is averred that for a valuable consideration, on the 12th of November, 1897, she and her husband sold and conveyed an undivided one-half interest in the lands to her co-plaintiff, H. G. McConnell. The defendants answered, denying all the allegations contained in the petition, and pleaded the statute of limitations of five years. In response to the plea of the statute of limitations the plaintiffs filed a supplemental petition, alleging that the plaintiff M. A. Hud-

son was, at the time the defendants took possession of the lands in controversy, a married woman, and has been ever since the defendants took possession of the land. The case was tried in the court below on these issues, and resulted in a verdict and judgment for the plaintiffs.

The evidence showed that W. T. Hudson became the owner in fee simple of the real estate sued for on January 1, 1875. He was the common source of title of both the plaintiffs and the defendants. On February 18, 1887, L. V. F. Randolph obtained a judgment against W. T. Hudson in the United States circuit court for the Northern district of Texas for $57,926.66. On February 20, 1889, W. T. Hudson, in consideration of one dollar and love and affection, conveyed to his wife, M. A. Hudson, the real estate in question, describing it by metes and bounds, and stating that it contained 200 acres. This conveyance was properly acknowledged and recorded on January 5, 1891. On January 28, 1893, an execution was issued on the judgment in the case of Randolph against W. T. Hudson, which was levied on the land in controversy. The land was sold on this execution, and the marshal conveyed it to L. V. F. Randolph by deed dated the 27th day of March, 1893. At the time W. T. Hudson conveyed the land in the suit to his wife, he and his family lived on it in a two-story house. He continued to occupy the house with his family until about the 1st of May, 1889, when he and his family moved to Haskell county, Tex. At the time he made the conveyance to his wife, he was insolvent, and owned no other real estate. Before moving to Haskell county, W. T. Hudson negotiated a trade with E. Y. Brown to the effect that Brown, in consideration of a sum of money and the conveyance to him of the real estate sued for, was to transfer to Mrs. M. A. Hudson a herd of cattle. Possession of the cattle was turned over to W. T. Hudson, who placed John Brown, a son of E. Y. Brown, in possession of the land. Brown occupied the land under this agreement for several years, and Hudson held possession of the cattle. The trade, however, was never completed. No deed was ever delivered conveying the land to Brown, nor a bill of sale transferring the cattle. Brown paid taxes, but no rent, on the land. The trade was finally abandoned, and the herd ––at least a part of it––surrendered to Brown or his agents. During this time, John Brown, being sued or threatened with suit by Randolph, surrendered possession of the land to him, and Randolph placed Thompson and the other defendants in possession as his tenants. The evidence tended to show that, if the trade between W. T. Hudson and Brown had been consummated, the cattle would have been transferred to Mrs. M. A. Hudson. The evidence was conflicting as to whether the Hudsons intended to and did acquire another homestead in Haskell county. It was shown by survey that the tract of land described as 200 acres really contained 220 acres. The court instructed the jury to find for the plaintiffs for an undivided 200 acres out of the land in controversy. The defendants excepted to this charge. A verdict was rendered in accordance with the instructions of the court, and to reverse a judgment thereon this writ of error was sued out.

1. The evidence, as stated, shows that W. T. Hudson owned the real estate in question. He was indebted to Randolph, who obtained a judgment against him. Hudson conveyed the land to his wife, M. A. Hudson. When Randolph obtained the judgment, and when W. T. Hudson made the deed to his wife, the land was occupied as a homestead by Hudson and his family, and to the extent of 200 acres was not subject to be sold to satisfy Randolph's judgment. Rev. St. 1895, art. 2396. It is unquestionably a general rule that property which is exempt by a positive statute from liability for the owner's debts is not susceptible of a fraudulent alienation, and, consequently, not within the statute of frauds. Bump, Fraud. Conv. (1st Ed.) p. 268; Wood v. Chambers, 20 Tex. 247; Fellows v. Lewis, 65 Ala. 343, 354; Thomson v. Crane (C. C.) 73 Fed. 327.

2. What real estate is to be subject to and exempt from execution issuing from the United States courts is governed by the local law where the real estate is situated. Fink v. O'Neil, 106 U. S. 272, 1 Sup. Ct. 325, 27 L. Ed. 196; Nichols v. Levy, 5 Wall. 433, 18 L. Ed. 596; Spindle v. Shreve, 111 U. S. 542, 4 Sup. Ct. 522, 28 L. Ed. 512; Rev. St. U. S. 916. This case is, therefore, to be examined in the light of the Texas law. The homestead of a family, not in a town or city, under the Texas statute and constitution, consists of not more than 200 acres, with the improvements thereon. Rev. St. 1895, art. 2396; Const. art. 16, § 51. It has been the constant policy of the state, in its constitution and legislation, as construed by many decisions of its supreme court, to favor by liberal interpretations the exemptions in favor of the debtor. These decisions construing the state's constitution and statutes are as binding on this court as the constitution and statutes themselves. Elmendorf v. Taylor, 10 Wheat. 152, 6 L. Ed. 289; Post v. Supervisors, 105 U. S. 667, 26 L. Ed. 1204.

3. At the time W. T. Hudson made the deed to his wife, Randolph, as his judgment creditor, had no claim on the homestead of 200 acres, which were embraced in the conveyance. As Wheeler, C. J., in Martel v. Somers, 26 Tex. 551, said: "The conveyance cannot be deemed fraudulent as to creditors, because the homestead was not liable to be taken in execution or to forced sale for the payment of debts." The husband clearly has the right to give his homestead to the wife. His creditors cannot complain, because they are not injured. This is distinctly held in Blum v. Light, 81 Tex. 414, 16 S. W. 1090, where it is said that the husband may make a voluntary conveyance of the homestead to the wife, and his creditors cannot complain. The deed, therefore, of W. T. Hudson to his wife, was not made invalid by the fact that Randolph held an unsatisfied judgment against the former. Hargadene v. Whitfield, 71 Tex. 482, 9 S. W. 475. Was there anything else in the transaction to make it voidable? If Hudson had the right to give his wife the homestead, she had the right, the husband joining in the deed, to convey it to Brown in exchange for cattle. This trade, however, was never completed, and has no bearing on the question involved in the case, except as evidence tending to show the intention of W. T. Hudson in making the deed to his wife. If she had attempted to sell the

homestead for money, and had failed to complete the sale, it would
not, we think, tend to show fraud in the conveyance of her husband
to her.  She having only attempted to do what she had the right to
do, we cannot think her act raises any presumption of fraud.  In
Blum v. Light, supra, the husband and wife conveyed the homestead
to a third person for $3,100 in cattle and a note for $600.  As a con-
sideration for the wife's joining in the conveyance, the wife was to
receive the cattle as her separate property.  This transaction was
held valid as against the creditors of the husband.  It would be
equally valid, it seems, for the husband to convey the homestead
direct to the wife; and, if the conveyance makes it hers, she can,
of course, do as she pleases with it, so far as her husband's creditors
are concerned.  If the trade with Brown had been completed, and
the ownership of the cattle were in controversy here, and it could
be shown that the transaction between Hudson and his wife, and
the exchange with Brown of the homestead for the cattle, were all
artifices for the purpose of abandoning the homestead and putting
the proceeds in the cattle out of the reach of W. T. Hudson's cred-
itors, the real title to and beneficial interest in the cattle being in
W. T. Hudson, then the cattle might be subjected to the satisfaction
of Randolph's judgment.  Darst v. Trammell, 27 Tex. 129; Blum v.
Light, supra.  But the contest here is as to the homestead.  The
husband conveyed it to the wife.  The title is still in her if the deed
is valid.  If the title vested in her, Randolph got no title by the
marshal's deed conveying the land as the property of W. T. Hudson.
Let it be granted that there was evidence tending to show that Hud-
son would not have conveyed to his wife if he could have sold the
homestead for cattle, and safely, as against his creditors, have taken
the title to the cattle in his own name.  Grant that the evidence
tended to show that he was made generous to his wife by the stress
of his insolvency, and that he would have sold the homestead for
cash or for cattle except for his insolvency.  This, we think, would
not alter the case.  He could not sell the homestead without the wife's
consent.  She had rights in it that the law is made to protect.  She
could have declined to join in the sale unless she was provided with
an equivalent,—with something she deemed equal to the shelter se-
cured by the homestead laws.  Whatever his intentions may have been,
the wife's doing no unlawful act, and the creditor being deprived
of no legal right, we can see no reason based on the trade with E.
Y. Brown for holding the deed invalid.  But there are other reasons
urged for declaring the deed void, which must be separately con-
sidered.

4. It is contended that the deed is made void because it contains
20 acres in excess of the homestead.  The conveyance to M. A. Hud-
son being prior in date to the marshal's conveyance to Randolph,
the former had prima facie the better right.  On the record evidence,
the plaintiffs below, after proving that the land sued for was the
homestead at the date of the conveyance by Hudson to his wife,
were entitled to recover.  The defendants below became the actors
in the attack on the deed to Mrs. Hudson.  It called for only "200
acres" apparently,—only for the homestead.  It required the survey

to show the 20-acre excess. This survey was not made until April 14, 1899, after this suit was brought. Mrs. Hudson was not trying to reform or correct the deed. It has not been reformed or corrected. Generally, a deed entitles the grantee, as against the grantor and those claiming under him, to recover the part of the land that the grantor was entitled to convey and which he did convey. If it includes other lands, which the vendor, as against his creditors, had no right to convey, that fact does not prima facie vitiate the deed as to the lands rightly conveyed. To have that result, fraud must be shown, and it must be proved that the vendee knew of the excess, and so participated in the fraud. If Randolph, after the return of the execution unsatisfied, instead of causing the marshal to sell the land, had filed a bill in equity to vacate the deed of Hudson to his wife for fraud, the deed would have been set aside only as to the 20 acres. As to the 200 acres, it would be good in equity as against him. Why should it not also be good at law? In some cases it has been said that a deed fraudulent in part is fraudulent in toto; but this rule should not be applied to a case where an excess of a few acres are inadvertently included in a deed. It is a general rule that, if a judgment is taken wrongfully for more than is due, the fraud destroys the whole. Peirce v. Partridge, 3 Metc. (Mass.) 44. But, if no fraud is intended, and the attachment or judgment is taken for too much inadvertently, it will be valid for the correct amount. Felton v. Wadsworth, 7 Cush. 587. And when there are several grantees in the same deed it may be valid as to one and invalid as to another. Anderson v. Hooks, 9 Ala. 704; Gary v. Colgin, 11 Ala. 514; Prince v. Shepard, 9 Pick. 176. The evidence shows that the tract of land held by Hudson was originally a larger tract, and that 100 acres had been sold off. There was no evidence that he or his wife knew the number of acres in the tract. When he came to convey to her the homestead, it is described as containing 200 acres. After this suit was brought, the survey was made, and it was then, so far as this evidence shows, for the first time ascertained that the homestead, as described by metes and bounds, contained 220 acres. The levy made on the land in the case of Randolph against Hudson, and the marshal's deed to Randolph, are not set out in the record; but it is stated in the record that the levy was on the "land in controversy," and that the deed conveyed "the land in controversy." We conclude that in both the levy and deed the description was as in the petition, to wit, "200 acres of land on the Brazos river," etc., describing it by metes and bounds. There is no evidence to show that any fraud was intended by the insertion of the 20 acres in excess of the homestead, or that the excess was known either to the grantor or grantee, or even to Randolph, before the survey. We think, therefore, that the deed is not made invalid as to the homestead by the insertion inadvertently of the 20 acres in excess of the homestead of 200 acres. This view is sustained in Martel v. Somers, 26 Tex. 551, 560; and by Brewer, J., in Farwell v. Kerr (C. C.) 28 Fed. 345; and by Hawley, J., in Thomson v. Crane (C. C.) 73 Fed. 327. Even if the husband had knowledge of the excess in the deed, and had fraudulent intent as

against his creditors, it would not make the deed to the wife void as to the homestead (Bell v. Devore, 96 Ill. 217); otherwise, the husband could, by an artifice and fraud of which the wife was innocent, defeat her homestead rights by an act which appeared to her to better secure them. These conclusions are as applicable in a court of law as in a court of equity, for a deed or bill of sale may be held valid at law as to part of the property conveyed or transferred and invalid as to part. Weller v. Wayland, 17 Johns. 102. There is nothing in the Texas statute (Rev. St. 1895, art. 2545) that conflicts with these principles. It only contains the language common to such statutes, making voluntary conveyances "void as to prior creditors." In Kerrison v. Cole, 8 East, 231, 232, the instrument in question was a bill of sale and mortgage of a ship, which, by statute, was declared to be "utterly null and void to all intents and purposes." In the instrument was a covenant to repay the money lent. Mr. Justice Lawrence held that the instrument might be good in part and bad in part, and that the undertaking to repay the money was good. It is clearly a just rule, when good and valid provisions are mixed with bad and invalid, to sustain the former whenever a separation can be made. This would not be done, however, in a case where a statute by its express terms declares the whole deed or contract void on account of some provision which is unlawful; nor where there is some all-pervading vice, such as actual fraud, participated in by both parties to the contract or deed. But there is no such statute applicable to this case, and no such proof of fraud. Lord Hobart quaintly said "that the statute is like a tyrant; when he comes he makes all void; but the common law, like a nursing father, makes void only that where the fault is, and preserves the rest." Norton v. Simmes, Hob. p. 48, 12c; Anderson v. Hooks, 9 Ala. 704, 706.

5. It is conceded in the brief for the plaintiffs in error that "the husband can convey directly to the wife his separate estate as well as community realty, neither being a homestead." Story v. Marshall, 24 Tex. 306, 307. The learned counsel contends, however, that the husband cannot convey the homestead directly to the wife, because the constitution and statutes of Texas provide that the wife must consent to and join in the conveyance of the homestead. Const. art. 16, § 50; Rev. St. 1895, art. 636. When the wife joins in such conveyance, the statutes provide for an acknowledgment by her on privy examination. Rev. St. 1895, arts. 635, 4618. It is urged that, these provisions not being complied with, the deed by Hudson, conveying the homestead to his wife, is void. The statutes requiring the privy examination of the wife as to conveyances of the husband and of her separate property are for her protection and benefit. They are not applicable, we think, to a conveyance of real estate by the husband to the wife. It being conceded that the husband, under the Texas law, can convey his real estate direct to the wife, there is no reason why he cannot convey to her the homestead to which he has the title. The consent and privy examination of the wife are required only when the conveyance is made to another. As she does not sign, it is not necessary for her to acknowledge a deed to herself. Her acceptance of the conveyance and

claim of right under it shows her consent to it. The reason of the law requiring her acknowledgment is not applicable to a conveyance made to her, and the statute has no application.

6. It remains for us to consider the defense of the statute of limitations of five years. Peaceable and adverse possession of real estate for five years bars a recovery. Rev. St. Tex. 1895, art. 3342. Brown went into possession in May, 1889. This suit was brought July 9, 1898. The evidence shows that the plaintiff below, M. A. Hudson, was a married woman when the land was conveyed to her and when the adverse possession commenced, and has remained a married woman to the present time. Article 3201 of the Revised Statutes of Texas of 1879 provided that this statute of limitations should not run against a married woman. This exception in favor of married women remained the law until April 1, 1895, when the statute was so amended as to permit the limitation to run against married women. The amending statute left out married women in the list of those against whom the statute was not to run pending the disability. This language is then used:

"Provided that limitation shall not begin to run against married women, until they arrive at the age of twenty-one years; and, further, that their disability shall continue one year from and after the passage of this article, and that they shall have thereafter the same time allowed others by the provisions hereof." Rev. St. 1895, art. 3352.

Until April 1, 1895, article 3201, supra, made the disability of coverture complete. The amending act of April 1, 1895, removes the disability as to married women over 21 years of age, but it is provided that the disability shall continue for one year after the act takes effect. One year after the amending act took effect married women had no disabilities. From that period,—one year after the act took effect,—they start even with men and single women, and then they are to "have the same time allowed others by the provisions hereof." The act gives the married woman over 21 years of age one year to learn that her disabilities are removed, and it is then applied to her as to men and single women. One year after the passage of the amendment it began to apply equally to married and single women. Five years had not elapsed when this suit was brought from the removal of Mrs. M. A. Hudson's disabilities of coverture. We are advised that this statute has not been construed by the supreme court of Texas. We cannot concur in the contention of the plaintiff in error that the time elapsing before the adoption of the amendment should be counted against married women, giving them only one year to sue after the adoption of the amendment.

7. The material facts in the case are proved by record evidence or by uncontradicted evidence. The conflict is about matters that are immaterial. Where the case depends on evidence about which there is no conflict, and of a kind from which different inferences cannot be reasonably drawn, the court may direct the verdict. If it would be the plain duty of the court to set aside a verdict if given for the defendants, the court should direct the jury to find for the plaintiffs. Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780. The court properly directed the verdict for the plaintiffs. The judgment of the circuit court is affirmed.