### DUNCAN v. FERGUSON-McKINNEY DRY GOODS CO. et al.

(Circuit Court of Appeals, Fifth Circuit. February 7, 1907.)

No. 1,545.

**1. BANKRUPTCY—EXEMPTIONS—LAWS OF STATE.**

The exemption laws of the state where a bankrupt has his domicile control as to the exemptions allowed in the bankruptcy proceedings, as provided by Bankr. Act July 1, 1898, c. 541, § 6, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424].

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 664, 665.]

**2. HOMESTEAD—ABANDONMENT.**

A bankrupt owned a business homestead, which was exempt as provided by Const. Tex. art. 16, §§ 50, 51, and by Rev. St. Tex. 1895, §§ 2395, 2396. The building burned, and pending reconstruction the bankrupt leased it for a year, with the privilege of renewal for four years longer, reserving desk room therein, and thereafter used the desk in the building and certain space for the storage of merchandise in connection with his business as a broker. *Held* that, bankruptcy proceedings having intervened before any election had been made by the tenant to renew the lease, the leasing of the property did not constitute such an abandonment of the homestead as subjected it to the claims of the bankrupt's creditors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Homestead, §§ 322–329.]

Petition for Superintending and Revising of Proceedings from the District Court of the United States for the Western District of Texas.

C. S. Bradley and C. D. Gustavus (William & Bradley, on the brief), for petitioner.

P. W. Brown and J. D. Williamson, for respondents.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. The question to be decided is whether or not, on the facts disclosed by the record, J. T. Duncan, a bankrupt, is entitled to have lot No. 9 in block No. 2 in the town of Oakwoods, Tex., worth $2,000, set apart to him as exempt, under the laws of Texas, from the claims of his creditors. Duncan's claim of homestead exemption, though at first allowed by the referee, was finally decided against him by the referee and by the bankruptcy court, and he seeks, by petition for revision under section 24b of the bankruptcy act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]), to reverse the order. The certificate and report of the referee · in bankruptcy embodies a condensed statement of the evidence taken on the contest of Duncan's claim. There is no conflict in the relevant evidence found as facts by the referee. No question arises, therefore, except one of law as to the right of exemptions on the facts stated. Duncan, who was married and the head of a family and whose wife was living, had been using the lot in controversy as a place of business as a merchant for five years next preceding October 19, 1904. On that day his house and stock of goods were burned. Not having the means himself to rebuild the house, he gave a mechanic's lien to a Mr. Clark to·secure the money necessary for that purpose. The house was rebuilt at a cost of $1,100. After the fire he disposed of some remnants of goods and engaged in the brokerage business, and has been engaged in that business continuously since that date. Before the house was rebuilt on the lot Duncan made a contract leasing the lot to L. H. Colbert, who moved into it before it was finished. The lease was as follows:

"The State of Texas, County of Leon.

"Know all men by these presents: That I, J. T. Duncan, of the State and county aforesaid, for and in consideration of the sum of three hundred dollars to me in hand paid by S. D. Colbert, receipt of which is hereby acknowledged, have let and leased unto the said S. D. Colbert, and by these presents do let and lease unto the S. D. Colbert Lot 9 in Block No. 2 in the town of Oakwoods, Texas., together with all improvements thereon, for the term of one year, beginning from the date of occupancy of the house thereon, which is to be as soon after the house on said lot is repaired by A. T. Clarke and put into condition for occupancy according to contract with said A. T. Clark this day made.

"The rent on said lot and house is $25.00 per month, the first twelve months being paid for beginning as above stipulated, the other twelve months rents to be paid at the end of each month.

"It is further agreed and understood on the part of said J. T. Duncan that the said S. D. Colbert had the option is (as) a privilege granted to said S. D. Colbert, of retaining said house and lot for four years longer after expiration of said one year, 2nd year at $25.00 per, and other three at $35.00 per month, to be paid monthly by giving the said J. T. Duncan thirty days notice of acceptance of such option before the expiration of one years, after occupy-

ing said house and is further agreed that said lot and house shall not be sub-
rented without my consent.

"Witness my hand on this Oct. 31, A. D. 1904.          J. T. Duncan."

The lease was acknowledged before a notary. At the time Duncan signed the lease it was orally agreed between him and Colbert that he (Duncan) "retained desk room" and the right to "store such goods as was necessary to his brokerage business"; and Duncan told Colbert that "he would not let him have the house unless he [Duncan] could have an office in it." While the store was rebuilding, Duncan was offered office room by other merchants, but always declared his intention of using his own house when it was finished, and that he had reserved the right to so use it at the time of his lease to Colbert. After the house was finished, about March 1, 1905, he commenced using it as an office in connection with his lessee, Colbert. He used a desk jointly with Colbert, and had letter files and did his office work in the building. He sold bacon and flour. He took orders for as near a car load as he could get, and, if he did not have orders for the whole car, he stored the remainder, when it was small, in the store leased to Colbert. The evidence reported by the referee also showed that Duncan's wife had bought a livery stable business for about $300, and that Duncan gave it some attention. But this seems to us immaterial. Duncan had acquired no other homestead. On May 6, 1905, Duncan was adjudicated a bankrupt on his petition, and, as before stated, claimed the lot as his homestead. The exemption laws of the state where the bankrupt has his domicile control as to the exemptions allowed. Bankr. Act July 1, 1898, § 6, c. 541, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424]. Article 16, § 50, of the Constitution of Texas provides that:

"The homestead of a family shall be and is hereby protected from forced sale for the payment of all debts, except for the purchase money thereof * * * or for work and material used in constructing improvements thereon. * * *"

Section 51 of the same article is as follows:

"Sec. 51. The homestead not in a town or city shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or lots not to exceed in value five thousand dollars at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of the family; provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

These constitutional provisions are substantially repeated in the Texas statutes. Rev. St. Tex. 1895, §§ 2395, 2396. It has been the policy of the state of Texas in its Constitution and legislation, as construed by the decisions of its Supreme Court, to favor by liberal interpretations the exemptions in favor of debtors. These decisions, construing the state Constitution and statutes, are as binding on this court as the Constitution and statutes themselves. Thompson v. McConnell, 107 Fed. 33, 36, 46 C. C. A. 124.

The principle is well established that the business homestead, distinct from the residence, must be reasonably necessary to the business

or calling of the head of the family. Duncan v. Alexander, 83 Tex. 441, 18 S. W. 817. There seems to be no substantial doubt that the house was suitable and reasonably necessary for the commission or brokerage business in which the claimant had embarked. The controversy turns on the contention that he had abandoned or lost his right to have it exempted. The provision that the temporary renting of the homestead shall not change its character when no other homestead has been acquired, it has been said, will authorize the conclusion that a renting of the homestead not of that description will change its character. Malone v. Kornrumpf, 84 Tex. 454, 459, 19 S. W. 607. But whether the renting is other than temporary must depend on the facts of the case in question. The lease in this cause is for one year, with an option to the lessee to renew it at its expiration so that it would continue four years longer. The lease is dated October 31, 1904, and the lessor was adjudicated a bankrupt May 6, 1905. It does not appear whether or not the lessee ever intended to exercise the option so as to extend the lease beyond one year. Whether a lease binding on both parties for a term of five years would be such a contract as would deprive the lessor of his homestead rights is a question which is not necessary to decide in this case. It may be conceded that such lease, absolute in its terms, binding on both lessor and lessee, would not be "a temporary renting," within the meaning of the Texas Constitution.

In addition to the fact that this lease is not shown to be binding on the lessor and the lessee for longer than one year, there are other very pertinent facts to be considered. The lot in question had been for a long period the business homestead of Duncan when he was a merchant. It was his intention that, notwithstanding the lease made by him, it should be his business homestead in his new business as broker. When he made the contract of lease, whether it was to last one year or five, he reserved the right to use the place in the conduct of his new business. He began to actually so use it as soon as the house was rebuilt on the lot, and was so using it at the time of his bankruptcy. In Hurt v. Hollingsworth, 100 U. S. 100, 104, 25 L. Ed. 569, Mr. Justice Field, speaking for the Supreme Court, said:

"According to the decisions of the Supreme Court of Texas, it would appear that, in order to work a forfeiture of the right to the homestead, the owner's cessation of occupancy must be with an intention of total relinquishment, shown by clear and decisive circumstances."

Can it be claimed that in this case there was a "total relinquishment"? On the contrary, the clear purpose of the claimant, as shown by his declarations and acts, and as shown by the understanding between him and his lessee at the time of the making of the lease, was to retain, and not to relinquish, his business homestead. When Duncan's storehouse and goods were destroyed by fire, the law allowed him a reasonable time to adapt himself to his changed condition. Scheuber v. Ballow, 64 Tex. 166. He had the right to embark in a new business. The fact that he did but little in it is immaterial. If he is attempting to use the place in good faith for the purpose of a business, it should be protected. Gassoway v. White, 70 Tex. 475, 477, 8 S. W. 117; Hargadene v. Whitfield, 71 Tex. 482, 9 S. W. 475.

We have carefully examined all of the cases cited as sustaining the conclusion of the learned trial judge, and we find that they differ so in their facts from the instant case that no one of them can be considered as controlling here. Six cases are cited, five by the Supreme Court of Texas and one by the United States District Court for the Western District of Texas. We briefly refer to each of them. It was held in Re Flannagan (D. C.) 117 Fed. 695, that the homestead claimant, having made a general assignment and abandoned his business to which the house was suitable, and having engaged in farming, with no intention of re-engaging in the mercantile business, except on condition he could effect a settlement with his creditors, and even then he would have no means to so engage in such business as would render the disputed premises suitable for a place of business, was not entitled to the exemption. In Shryock v. Latimer, 57 Tex. 674, the homestead claimant had ceased to use the property as a place of business or for any other purpose, and had ceased to have any business to which such property was necessary or suitable long before the controversy arose, and it is decided on the ground that he had no "business" or "calling" other than that of a clerk for which the premises were not necessary or suitable; and it is merely held that a conditional intention at some future time to go back into the business of a merchant, to which the premises would be suitable, was not sufficient to exempt the premises. In Houston v. Newsome, 82 Tex. 77, 17 S. W. 603, the trial court found as a fact that the homestead claimant "quit the business of merchandising altogether and commenced dealing in cattle," and to renting some farms for another. The Supreme Court said:

"The findings of fact heretofore set out are in all material respects supported by the evidence. They are certainly not stated by the court more emphatically than the record would justify."

And after characterizing the claimant's business as an "airy nothing," and without a "local habitation," if not without "a name," the court holds, as in the Shryock Case, supra, that he had ceased to have a business to which the premises were suitable. In Duncan v. Alexander, 83 Tex. 441, 18 S. W. 817, the homestead claimant had himself decided, years before the controversy, that the house in question was not necessary for him to carry on his business, and had abandoned it and used exclusively the adjoining building as his place of business. In Pfeiffer v. McNatt, 74 Tex. 640, 12 S. W. 821, the question was whether the homestead claimant, who actually carried on several small businesses, that of "deputy postmaster," "conveyancer," "notary public," and "mayor" of a small town, should have two large houses exempted to him as a place of business, when all his businesses could well have been carried on in one small house, or whether he should be entitled to protection in either house as a place of business; and the court held that two houses were not "adapted and reasonably necessary" for the purpose, and he, having rented one house, had designated the one to which his exemption should attach. But in that case it was held that he was entitled to one house exempted to him as a business homestead. The case of Alexander v. Lovitt, 95 Tex. 661, 69 S. W. 68, is also relied on as sustaining the judgment below. In that case the claimant of the

homestead made a lease of it for three years, with the right in the lessees to hold it for five years. He agreed not to re-engage in the business during the continuance of the lease. He moved his safe, etc., off the premises until he found it necessary to move the safe back on the premises "to strengthen his homestead claim." He was engaged in winding up his former business and in traveling as a salesman on commission. At the time the property was levied on he was not carrying on any business upon the homestead in controversy. His claim was that the property was exempt because of his intention to resume business when he should be able to do so after the expiration of the lease. The court decided against the homestead claim. It should be noted that the claimant did not reserve at the time of making the lease, as in the instant case, the right to use the property, or any part of it, for the purposes of a new business, and he agreed not to re-engage in his old business for a period of three or five years. The court said:

"This was not merely a suspension of the business and the use of the property for a reasonable time in order to change from one business to another, or to arrange for a resumption, as this court has held is consistent with the continuance of the exemption where the intention to resume exists."

The court held that the lease and the sale of the business "completely displaced the existing business and use of the house, and precluded a resumption within a reasonable time." The case showed a "total relinquishment"—to quote Mr. Justice Field—of the right to use the property as a business homestead. In the instant case the claimant's business homestead was destroyed by fire. He had it rebuilt, and in doing this he incurred a debt of $1,100, which was a charge on it. His merchandise being destroyed by the fire, he chose to change his business. In making the lease he retained the right to use the property in connection with his new business. He retained the right of desk, room and the right to store goods in the house. That his business was not large is not important. "The law does not, as a condition for its protection of these rights, impose upon the failing debtor any definite degree of success in his new enterprise. The intent of the exemption seems to be to aid those needing it rather than those in prosperity." Hargadene v. Whitfield, 71 Tex. 482, 9 S. W. 475. It may be true that a renting of the homestead which is not "temporary" may defeat the claim. But we find no case to the effect that a renting of the property upon condition that the claimant may continue to use it in such way as is necessary to carry on his business amounts to an abandonment of the business homestead, when the claimant does, in fact, continue to so use the property. In the instant case the claimant had need to obtain money to pay off the incumbrance incurred by rebuilding the house. It seems to us that it would be a harsh rule that would deprive the claimant of the right to lease the property subject to his use of it for business homestead purposes until the incumbrance was discharged. The Texas court of last resort has said more than once that the cessation for a time to use the property for the purposes for which it was exempted and the temporary application of it to a use which may be profitable to the family, as by renting it, does not destroy its homestead character (Malone v. Kornrumpf, 84 Tex. 454, 459, 19 S. W. 607), and we would be reluctant to hold before that court had

so construed the Constitution and statutes that, to maintain the right of a business homestead, the claimant must show that it was used exclusively and continuously in the exercise of his business vocation. The leasing not having extended beyond one year—the record does not show that the option to continue it had been accepted—and the claimant having reserved the right to use the property as a business homestead, we do not believe that the transaction constituted an abandonment of the right of homestead. Considering all the circumstances shown by the record, we are of opinion that the claimant had not abandoned or lost his homestead right.

The decree of the District Court is reversed, the prayer of the petition for revision is granted, and the bankruptcy court is directed to enter a decree allowing the claim of homestead.

NOTE.—The petitioner also brought this case to this court by appeal. The controversies between the parties having been fully decided in the foregoing case on the petition to superintend and revise, the appeal is dimissed.